604 So.2d 1288 (1992)
Reginald BRITTON, Appellant,
v.
STATE of Florida, Appellee.
No. 91-00578.
District Court of Appeal of Florida, Second District.
September 11, 1992.
*1289 James Marion Moorman, Public Defender, and Stephen Krosschell, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Brenda S. Taylor, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Reginald Britton appeals his convictions for delivery of cocaine, burglary of a dwelling, and two counts of battery on a law enforcement officer. We affirm his conviction for delivery of cocaine. Because the trial court improperly allowed the state to cross-examine the defendant extensively concerning his prior criminal record, we reverse his convictions for burglary of a dwelling and for the two counts of battery on a law enforcement officer.
Mr. Britton admits that he sold cocaine to an undercover officer in a parking lot of a Tampa sandwich shop in August 1990. This sale supports the conviction for delivery of cocaine, which we affirm.
After the sale, Mr. Britton quickly walked away and the officer followed in his car. The officer called for backup. A few seconds later, two backup officers arrived in their car and located Mr. Britton. The officers testified that they wore jackets with the word "police" across the front and back. They approached Mr. Britton and asked to talk with him. He fled. One officer chased him on foot while the other officer followed by car.
Mr. Britton ran into one house and out the back door. A child at this house told the officer that Mr. Britton had run into another house, which belonged to Mr. and Mrs. Jenkins. Four officers were sent to the back door of the Jenkinses' house. They knocked and announced. Mrs. Jenkins allowed the officers to enter the house. The officers found Mr. Britton hiding in a closet. Thereafter a struggle occurred, resulting in three charges of battery on a law enforcement officer. The testimony concerning this incident is in conflict. Mr. Britton claims the officers beat him without provocation. At least to some extent, the testimony of both Mr. and Mrs. Jenkins support his version of this incident.
Mr. Britton testified that the police were not wearing police jackets and that he entered the Jenkinses' home to hide from these unknown assailants. He testified that the Jenkinses' youngest child gave him permission to hide in the house. Mrs. Jenkins testified that Mr. Britton was a friend of her son, but he had never been to her house while she was there. He did not have her permission to enter the house that evening.
During the state's cross-examination, the prosecutor, over objection, questioned Mr. *1290 Britton extensively about his prior criminal record. Mr. Britton admitted that he had been convicted of a prior felony. When the prosecutor asked "how many times" he had been convicted of felonies, Mr. Britton answered: "All the times I got convicted of a felony for them." When pressed further, he suggested: "About three or four times." The prosecutor proceeded to inform Mr. Britton that he had thirteen prior felonies. Mr. Britton indicated that he did not really remember how many prior convictions he had received. The prosecutor then asked a string of questions about prior convictions while apparently referring to documents. The documents were never offered into evidence. In the course of this questioning on these documents, the prosecutor elicited from Mr. Britton that he had been convicted of numerous specific offenses, including assault, battery, sales and delivery of cocaine, and two burglaries. In closing argument, the prosecutor stressed to the jury that Mr. Britton should not be believed because he had thirteen prior felony convictions. Ultimately, when records of prior convictions were introduced into evidence for sentencing purposes, the state established only seven prior felony convictions.
The jury convicted Mr. Britton of delivery of cocaine, burglary of a dwelling, and two counts of battery on a law enforcement officer. He was found not guilty of the remaining count of battery on a law enforcement officer. The trial court sentenced the defendant to a total of eighty years' imprisonment as a habitual violent felony offender. This timely appeal followed.
The first issue Mr. Britton raises is whether he should have received a judgment of acquittal concerning the alleged burglary of a dwelling. Initially, the state charged this defendant with trespass in an occupied structure. Later the charge was upgraded to burglary of a dwelling. Mr. Britton maintains that running into a house with the intent to hide from pursuing officers is not burglary.[1] We conclude that this conduct can constitute burglary, and the evidence was sufficient to submit the issue to the jury. Section 810.02(1), Florida Statutes (1989), defines burglary as "entering or remaining in a structure or conveyance with the intent to commit an offense therein... ." Mr. Britton argues that the "offense" must be one directed to the persons or property within the structure or conveyance. The statute, however, requires merely an "intent to commit an offense therein." The state's theory in this case was that Mr. Britton entered the Jenkinses' house with the intent to commit an offense, resisting an officer without violence, while inside that house. Cf. State v. Stephens, 601 So.2d 1195 (Fla. July 2, 1992) (holding that burglary occurs when person enters conveyance, e.g., automobile, with intent to steal it, rather than committing offense therein, and noting that there is no requirement that crime must be one that can be completed solely within fixed limits of particular place, only that crime is intended to be committed there).
Mr. Britton also contends that the trial court erred in allowing the state to use improper impeachment methods. We agree. Generally, impeachment concerning a defendant's prior convictions is limited to two questions. The first question establishes that the defendant has committed a felony or other offense involving dishonesty or false statement. Section 90.610(1), Fla. Stat. (1989). If the defendant admits such a conviction, then the prosecutor can establish the number of such prior convictions. The prosecutor cannot ask additional questions unless the answers to these questions are untruthful. Parks v. Zitnik, 453 So.2d 434 (Fla. 2d DCA 1984).
Mr. Britton's admission concerning his prior felonies was not precise, but it is not clear from this record that his response was untruthful. Similar to the appellee in Parks, Mr. Britton answered the question concerning the "number of times" he had been convicted with an approximation, "about three or four times." It appears probable that his answer was not untruthful, *1291 but simply the result of a literal answer to the prosecutor's question. Because of multiple-count informations leading to simultaneous felony convictions, Mr. Britton had been convicted at only three or four sentencing hearings, i.e., three or four "times." When the prosecutor suggested that the records reflected thirteen prior felonies, the defendant did not expressly deny this number.[2]
Assuming that Mr. Britton's incorrect answer justified some additional impeachment evidence, the trial court erred because it allowed the state to elicit answers from the defendant about the specific nature of the prior convictions. It did not limit the state's impeachment to the introduction of records establishing the prior convictions. Williams v. State, 511 So.2d 1017 (Fla. 2d DCA 1987), review denied, 519 So.2d 988 (Fla. 1987); Parks; Sneed v. State, 397 So.2d 931 (Fla. 5th DCA 1981); Irvin v. State, 324 So.2d 684 (Fla. 4th DCA), cert. denied, 334 So.2d 608 (Fla. 1976). Especially in light of the discrepancy between the records introduced at sentencing and the records orally described during this lengthy cross-examination, we must conclude that this evidentiary problem is error.
This error is harmless beyond a reasonable doubt with respect to Mr. Britton's conviction for delivery of cocaine because he testified that he sold cocaine to the undercover officer. We cannot determine from the record, however, that the improper impeachment is harmless beyond a reasonable doubt with respect to his convictions for burglary and the two counts of battery on a law enforcement officer. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Accordingly, we reverse his convictions for these offenses and remand for a new trial.
Finally, we also reverse the imposition of the public defender's lien. The notice of lien that Britton received in the affidavit of insolvency was not sufficient to comport with the requirements set forth in Bull v. State, 548 So.2d 1103 (Fla. 1989). See Ferguson v. State, 554 So.2d 1214 (Fla. 2d DCA 1990).
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
PARKER, A.C.J., and PATTERSON, J., concur.
NOTES
[1] The defendant was charged with burglary of only the Jenkinses' home. No charges were filed concerning his brief trip through the other house.
[2] We recognize that his tone of voice may have indicated a denial not apparent on the appellate record.