ALTENBERND, Acting Chief Judge.
Gary Cannon appeals his conviction for robbery. Because the trial court prohibited Mr. Cannon from impeaching a key state witness with eleven prior felony convictions, we reverse and remand for a new trial.
Late in the evening on October 29, 1997, a masked person robbed an elderly gentle *998 man. The robber attacked the victim, knocked him to the ground, and took his wallet. The victim was unable to identify the robber because of the mask. There were no other eyewitnesses.
For over a year, there were no suspects for this robbery. Then, in February 1999, Constance Hanzl, jailed for violating probation, contacted detectives about this crime.[1] The detectives then interviewed Steve Eicher, who was the son of Ms. Hanzl’s boyfriend. When detectives first confronted Mr. Eicher, who was on probation, he denied any knowledge of the robbery. Later, he told detectives that Mr. Cannon had committed the robbery. As a result, the State filed an information in March 1999 charging Mr. Cannon with the robbery.
At trial, Mr. Eicher, Ms. Hanzl, and Mr. Eicher’s sister provided the bulk of the evidence linking Mr. Cannon to the crime. According to Mr. Eicher, he was with Mr. Cannon when Mr. Cannon planned the robbery. Mr. Eicher said he refused to participate in the crime and went home. Mr. Eicher and Ms. Hanzl testified that shortly thereafter, Mr. Cannon came to their home angry and violent because Mr. Eicher had left him to commit the robbery alone. Despite the ensuing argument, the three of them went to the home of a person named Cornbread, who was Ms. Hanzl’s partner in dealing drugs. According to Ms. Hanzl, Mr. Cannon purchased crack cocaine from her for $150, and the three of them smoked some of it. Ms. Hanzl and Mr. Eicher both testified that Mr. Cannon admitted committing the crime, and Ms. Hanzl said she saw the elderly man’s wallet with his photo identification inside. Mr. Eicher’s sister was not present the night of the incident, but testified that two days later she saw Mr. Cannon. He told her he had committed the robbery. The only other witness against Mr. Cannon was his former cellmate, who also claimed that Mr. Cannon had confessed to him.
When counsel for Mr. Cannon cross-examined Mr. Eicher, he asked Mr. Eicher whether he had been convicted of a felony. Mr. Eicher responded that he had been convicted of one felony. Then he modified his answer to explain there was more than one felony, but he was only convicted once. Mr. Eicher claimed he did not know exactly how many felonies were involved. Counsel for Mr. Cannon then sought to introduce into evidence judgments of conviction for eleven felonies committed by Mi*. Eicher. The trial court refused to allow the judgments into evidence and prohibited the defense from attempting to refresh Mr. Eicher’s recollection with the documents. Thus the jury learned only that Mr. Eicher had been convicted of “more than one” felony.
Once Mr. Eicher misadvised the jury as to his past felony convictions, Mr. Cannon could admit into evidence the certified copies of the judgments. See Perez v. State, 648 So.2d 715 (Fla.1995). The trial court erred in denying Mr. Cannon’s request to admit the documents into evidence, thus leaving the jury with a false impression of Mr. Eicher’s criminal past. See Fotopoulos v. State, 608 So.2d 784 (Fla.1992). Nor does it matter that Mr. Eicher may have simply failed to remember the exact number, as opposed to testifying to a false number. See Perez, 648 So.2d at 719; Porter v. State, 593 So.2d 1158, 1159 (Fla. 2d DCA 1992).
This case is distinguishable from Britton v. State, 604 So.2d 1288 (Fla. 2d DCA 1992). In Britton, we held that it was error for the state to cross-examine a criminal defendant with the specific nature of his prior convictions when he erroneously stated the number of his past felony convictions. In so holding, we suggested the prosecutor should have been limited in *999 his questioning when Mr. Britton’s response did not appear to be “untruthful.” Mr. Britton appeared to have counted the hearings at which he had faced convictions, rather than the totality of the counts that resulted in simultaneous convictions at those hearings. In addition, the prosecutor suggested the accurate number, and Mr. Britton did not dispute it. As a result, the jury in Britton was not left with an inaccurate view of Mr. Britton’s past convictions. To allow the prosecutor to delve further unfairly prejudiced Mr. Britton. By contrast, the jury in this case was left with an inaccurate picture of the number of Mr. Eieher’s prior felony convictions. The accurate number was never before the jury. Mr. Cannon’s defense, and the State’s case, depended upon the credibility of Mr. Eicher. Whether Mr. Eicher was convicted of a felony twice or eleven times may have made a difference to the jury.
The defense’s theory was that Mr. Eicher and his family had falsely accused Mr. Cannon of this crime in order to shift suspicion away from Mr. Eicher, who faced a possible revocation of his probation and a return to prison. Because the bulk of the evidence against Mr. Cannon came from Mr. Eicher and his family, we cannot conclude that the error is harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Accordingly, we reverse the conviction and remand for a new trial.
Reversed and remanded for new trial.
BLUE and FULMER, JJ., Concur.

. We do not know what Ms. Hanzl told the detectives. There was no testimony presented on this subject. Counsel for Mr. Cannon argued in opening statements, however, that Ms. Hanzl simply suggested the detectives speak to Mr. Eicher about the crime.