696 So.2d 901 (1997)
Desmond ROHAN, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1295.
District Court of Appeal of Florida, Fourth District.
July 2, 1997.
Richard L. Jorandby, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
*902 Robert A. Butterworth, Attorney General, Tallahassee, and Patricia Ann Ash, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Desmond Rohan appeals five convictionstwo counts of burglary with an assault or battery, two counts of battery and one count of false imprisonment. We affirm the burglary convictions, reverse the convictions for battery and false imprisonment, and remand for resentencing.
This case involves two incidents occurring on January 10, 1995. The first episode took place at about 10:15 a.m. in Port St. Lucie. A man rang Melissa Roque's doorbell and asked for "Shelly." The man's speech was impaired and he wore a hearing aid. Roque repeatedly explained to the man that no one named "Shelly" lived at that address. Roque shut and locked the door, but the man continued to knock. She opened the door and again faced the man asking for "Shelly." The man pushed his way in and shoved Roque backwards. She was able to force the man back out the door and he then drove away.
The second incident occurred at about 11:00 a.m. at a community college dormitory in Fort Pierce, about a twenty-minute drive from Roque's apartment. A man knocked on the door of Lisa Bloch's dorm room. Bloch was recovering from knee surgery and was unable to put pressure on her leg. She opened the door and saw a man with a hearing aid who was hard to understand. She thought that the man was asking for her roommate and she said that that woman was not at home. As Bloch started to close the door, the man forced his way into the room and began pushing her. Bloch's injured leg limited her ability to resist. The man took her by the arms and forced her back into the bedroom. He threw Bloch down on the bed, got on top of her, and began squeezing her neck. As she struggled, Bloch's head struck the alarm clock and set off the alarm. Startled, the man got off Bloch, left the bedroom and walked out the front door.
Rohan was arrested and charged with crimes arising from both incidents. For the Roque incident, he was charged with burglary with an assault or battery under section 810.02(2), Florida Statutes (1995)(first degree burglary), and battery under section 784.03, Florida Statutes (1995). For the Bloch episode, he was charged with battery, burglary with an assault or battery, and false imprisonment under section 787.02(1)(a), Florida Statutes (1995). After a jury trial, he was convicted of all charges.
Rohan first contends that the trial court erred in denying his pretrial motion to sever the Bloch charges from those where Roque was the victim. Joinder of offenses in the same information is proper under Florida Rule of Criminal Procedure 3.150(a) if the offenses "are based on the same acts or transactions or on two or more connected acts or transactions." Crimes are "connected" within the meaning of the rule if they "are linked in some significant way." Ellis v. State, 622 So.2d 991, 1000 (Fla.1993).
One form of connectedness under the rule is where crimes occur "during a `spree' interrupted by no significant period of respite." Id. at 1000. In addition to geographic and temporal proximity, cases finding a "spree" exhibit a similarity between types of crimes or the manner of their commission, as if the criminal conduct erupted from a common motivational source. For example, in Bundy v. State, 455 So.2d 330, 344-45 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), the defendant attacked four women, killing two, in a sorority house. Roughly an hour later, the defendant attacked a fifth woman in an apartment house several blocks away. The supreme court held that the later crime was properly joined with the earlier ones, due to their "close proximity in time and location, by their nature, and by the manner in which they were perpetrated." Id. at 345. In Ellis, the supreme court characterized the Bundy crimes as "a classic example of an uninterrupted crime spree in which no significant period of respite separated the multiple crimes." 622 So.2d at 1000.
Similarly, Gudinas v. State, 693 So.2d 953 (Fla.1997), demonstrates an uninterrupted crime spree. The defendant attempted to *903 break through a car window, while vulgarly screaming his intent to have sexual relations with the woman locked inside. The woman blew the horn and the man fled. No more than three hours later, in a nearby parking lot, the defendant raped and murdered a second woman. The supreme court ruled that the offenses against the two women "constitute a crime spree as contemplated in Bundy." Id. at 960. The court observed that
[t]he attempted rape and accompanying violence of [Gudinas'] aborted entry into [the first woman's] car, and the actual rape and extreme violence of his murder of [the second woman] demonstrate a "meaningful relationship" between the two attacks as required by Crossley [v. State, 596 So.2d 447, 450 (Fla.1992) ].
Id.; see also Rolling v. State, 695 So.2d 278 (Fla.1997)(within 72 hour period defendant stabbed to death five college students in their apartments, sexually battering three victims before killing them; crimes demonstrated a "temporal continuity" sufficient to constitute a "spree" under Bundy ).
The crimes in this case constitute a spree under Bundy and its progeny. The two incidents were close in time, occurring less than an hour apart. With driving time plugged into the temporal equation, there could have been no significant period of respite between the two burglaries. The aborted attempt at the Roque apartment may have "provided a causal link" to the more aggressive entry at Bloch's dorm room. See Gudinas, 693 So.2d at 960. Finally, there is a strong similarity in the types of crimes and the way in which they were committed. See Garcia v. State, 568 So.2d 896, 899 (Fla. 1990). The crimes were properly joined and there was no abuse of discretion in the trial court's decision not to sever. See Fla. R.Crim.P. 3.152(a)(2)(A); Crossley, 596 So.2d at 450.
Rohan next argues, and the state concedes, that the convictions for battery cannot stand, in light of Rohan's convictions for burglary with an assault or battery under section 810.02(2). It is improper to convict and sentence a defendant for both first degree burglary and the battery used to enhance the burglary charge. Pope v. State, 614 So.2d 51 (Fla. 4th DCA 1993); Crawford v. State, 662 So.2d 1016 (Fla. 5th DCA 1995); § 775.021(4)(b), Fla. Stat. (1995).
Rohan next attacks his false imprisonment conviction, contending that it was subsumed by the conviction for burglary with an assault or battery under the test enunciated in Faison v. State, 426 So.2d 963 (Fla. 1983). We agree and reverse the conviction for false imprisonment.
In cases where kidnapping or false imprisonment have been charged along with other crimes, courts have applied the Faison test to avoid a literal interpretation of the two statutes that would "convert almost every forcible felony" into an additional crime. Berry v. State, 668 So.2d 967 (Fla.1996); Walker v. State, 604 So.2d 475, 477 (Fla. 1992); see State v. Lindsey, 446 So.2d 1074 (Fla.1984)(supreme court cited Faison in holding that false imprisonment was separate from robbery); Perez v. State, 566 So.2d 881 (Fla. 3d DCA 1990)(applies Faison to false imprisonment); Keller v. State, 586 So.2d 1258 (Fla. 5th DCA 1991)(applies Faison to false imprisonment); but see Chaeld v. State, 599 So.2d 1362 (Fla. 1st DCA 1992)[1]. Faison provides a framework for analyzing the facts of a case to determine whether a defendant's conduct amounts to a confinement crime separate from other criminal charges. Under Faison,
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

*904 (a) Must not be slight, inconsequential and merely incidental to other crime;
(b) Must not be of the kind inherent to the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
426 So.2d at 965; Berry, 668 So.2d at 969.
Under the Faison test, Rohan's confinement of Bloch does not amount to criminal conduct separate from the burglary with a battery. The confinement was indistinguishable from the battery. See Wilcher v. State, 647 So.2d 1013 (Fla. 4th DCA 1994); Keller, 586 So.2d at 1262. The battery started when Rohan began pushing Roque after entering the apartment; the battery stopped when the alarm clock went off. The confinement began when Rohan grabbed the victim's arms and ceased when the battery stopped. See Berry, 668 So.2d at 969-70. The confinement had no "significance independent of" the burglary with a battery. There was no binding or other confinement of the victim which facilitated an escape or lessened the risk of detection. Id.
The first degree burglary convictions are affirmed. The battery and false imprisonment convictions are reversed and the case is remanded to the trial court for resentencing. See Smith v. State, 678 So.2d 1374 (Fla. 4th DCA 1996).
FARMER and STEVENSON, JJ., concur.
NOTES
[1] Chaeld holds that a Faison analysis does not apply to a false imprisonment charge, only to kidnapping. To reach this conclusion, the court focuses on the scienter requirement of the kidnapping and false imprisonment statutes. However, the rationale of Faison is that the conduct element of section 787.01(1)(a)"confining, abducting, or imprisoning another person against his will"must be limited to avoid a broad construction that would doubly criminalize the same conduct. Berry, 668 So.2d at 969. The false imprisonment statute, section 787.02(1)(a), Florida Statutes (1995), contains a conduct element similar to that of kidnapping; without any limitation it might apply in almost every forcible felony. For this reason, a Faison analysis is as appropriate to limit the scope of false imprisonment as it limits kidnapping.