648 So.2d 715 (1995)
Augustine PEREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 79446.
Supreme Court of Florida.
January 12, 1995.
*716 T. Philip Hanson, Jr., Greenfelder, Mander, Hanson, Murphy & Dwyer, Dade City, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sabella, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Augustine Perez appeals his conviction for first-degree murder and the corresponding sentence of death.[1] We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution. We affirm Perez's conviction for first-degree murder. However, because of error in the sentencing order, we vacate Perez's sentence of death and reduce his sentence to life imprisonment.
*717 The facts adduced at trial are as follows. On the morning of July 14, 1990, Perez hired Devlin, a prostitute, off the street in Tampa and the two went back to Devlin's apartment. Subsequently, Perez was unable to perform sexually and demanded his money back. When Devlin refused to return the money, Perez remarked that the incident was not over yet and left the apartment. That afternoon, Perez returned to the vicinity of the apartment and was seen forcing Devlin into his van at gunpoint. Later that day in Pasco County, Devlin escaped from the van and ran to a vehicle occupied by Paul Frost and his son Chad. Perez followed Devlin and forced her at gunpoint back into his van. Devlin's body was found several days later in an orange grove ditch where it had been tied to stakes underwater. Devlin had been shot twice in the chest.
Perez was convicted of the kidnapping and first-degree murder of Devlin and of two counts of aggravated assault on Paul and Chad Frost. Perez was convicted of all counts and the jury recommended a life sentence by a vote of ten to two. The trial judge overrode the jury's recommendation and sentenced Perez to death for the first-degree murder, fifteen years for the kidnapping, and five years on each of the aggravated assault charges. The court found three aggravating circumstances to exist: (1) the murder was committed during the course of a kidnapping;[2] (2) the murder was especially heinous, atrocious, or cruel;[3] and (3) the murder was cold, calculated, and premeditated.[4] The trial court found no statutory mitigating circumstances but found as non-statutory mitigators that Perez had no significant criminal history in this country and that he was a good worker.
As his first issue on appeal, Perez argues that the trial court committed reversible error in granting the State's motion in limine to exclude the alibi testimony of his girlfriend, Betty Ferguson.[5] The State made the motion during the trial immediately before Ferguson was called to testify. The basis for the motion and for the trial court's ruling was that Perez had failed to file a notice of intent to rely on alibi as required by the Notice of Alibi Rule, Fla.R.Crim.P. 3.200.[6] In issuing the ruling, the trial judge stated that there was no "good faith exception" to the alibi rule and also ruled that a finding of prejudice was not required. Perez argues that the court erroneously failed to conduct an inquiry into the existence of prejudice against the State as required by Richardson v. State, 246 So.2d 771 (Fla. 1971). Perez further argues that the court improperly failed to consider whether there were any alternatives short of exclusion of Ferguson's alibi testimony to overcome any prejudice that might have existed.
We agree with the trial judge that a finding of prejudice was not required. This Court held in Small v. State, 630 So.2d 1087 (Fla. 1994), that a defense violation of rule 3.200 inherently prejudices the prosecution. We reasoned that prejudice always exists if the State goes to trial without notice of an *718 alibi because it does not have the opportunity to determine whether there are witnesses to rebut the alibi witness's testimony or otherwise check the credibility of the witness or the validity of the testimony. Small, 630 So.2d at 1088-89. We further held in Small that the notice of alibi rule is not a discovery rule and rather than a Richardson inquiry, which is designed to determine if procedural prejudice has been caused by a discovery violation, a trial court should instead determine if good cause exists to waive the requirements of rule 3.200. Id. We stated that
[w]hile a trial court's failure to conduct a Richardson inquiry has been treated as per se reversible error, we hold that a trial court's failure to conduct a good cause hearing regarding compliance with the notice of alibi rule should be reviewed to determine whether the defendant was harmed by such failure.
Id. at 1089 (citation omitted).
In reviewing the record before us and the arguments made pursuant to the motion in limine, it does not appear to us that the defense had a good cause basis for not filing the required notice of alibi. However, regardless of whether the defense had good cause for the failure to file the notice, we do not find the trial court's failure to make such determination to be harmful.
Under the harmless error analysis, if there is a reasonable possibility that an error affected the verdict, then such error is harmful. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Ferguson's testimony would have placed Perez at home at 5:45 p.m. on the day of the murder. Even though this testimony could have rebutted testimony of witnesses indicating that Perez initially abducted Devlin between 3 and 5 p.m., the testimony could not refute the crucial testimony of the Frosts, whose testimony regarding the Pasco County incident, which by all accounts occurred between 6 p.m. and 7 p.m.[7], led to Perez's arrest. In reviewing the record in its entirety, we are convinced beyond a reasonable doubt that the omission of the alibi testimony did not affect the jury's determination of Perez's guilt[8].
Perez next argues that the trial court committed error in admitting certain testimony of State witness Detective William Lawless. Lawless testified that after Perez had been read his Miranda[9] rights, he was interrogated about his presence in Pasco County. Perez told Lawless that he was en route to Orlando when his van began to overheat and misfire, so he got off the interstate and got lost. Lawless testified that when he asked Perez why he had pulled into the driveway of a private residence that had an upgrade when there was a convenience store within sight which had a pay telephone, Perez "couldn't answer the question." Perez claims that Lawless's testimony was an impermissible comment on Perez's invocation of his right to remain silent and amounts to reversible error. We disagree. After a careful review of the record, we conclude that Lawless was explaining Perez's unsatisfactory responses to questions asked about why he was parked where he was. We find no error.
Perez also contends that the trial court erred when it denied the admission of certified copies of prior felony convictions offered to impeach the testimony of State witness Tary Lynn Huffman. Huffman, who was incarcerated in the Pasco County jail during the same time as Perez, testified that Perez told him where he had dumped a woman's body. He further testified that Perez indicated that the woman had gotten what she deserved. During the cross-examination, Huffman stated that he had been convicted *719 of more than ten felonies and when asked if he had been convicted of more than twenty felonies, Huffman answered, "[t]hat would be a guesstimation." Defense counsel then attempted to introduce certified copies of Huffman's eighteen prior felony convictions for impeachment purposes. The trial court sustained the State's objection to the evidence on the grounds that the certified copies were not impeachment evidence.
We agree with Perez that the trial court erred. Because Huffman did not answer the question concerning the number of prior convictions in a straightforward manner, the defense properly sought to impeach him with copies of his prior felony convictions. See Sheffield v. State, 634 So.2d 224 (Fla. 1st DCA 1994). However, because Huffman admitted to a large number of convictions and the State freely admitted that Huffman was a thief and a criminal, we conclude that any resulting error is harmless beyond a reasonable doubt. See, e.g., Christmas v. State, 632 So.2d 1368, 1371 (Fla. 1994).
Perez next claims that the trial court erred in denying his motion to suppress the identification of Perez made by Paul Frost. Perez argues that the out-of-court identification by Frost was unduly suggestive and that no sufficient independent basis exists to validate the in-court identification made by Frost. In the instant case, a show-up procedure was used for the out-of-court identification. Approximately one or two hours after Frost was assaulted he was taken to view Perez who had been apprehended several miles away. As this Court has previously stated, a show-up is inherently suggestive because a witness is presented with only one suspect for identification. Blanco v. State, 452 So.2d 520, 524 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). However, a show-up is not invalid if it does not give rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances. Id.
The factors to be considered in evaluating the likelihood of misidentification include
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In the instant case, the identification of Perez by Frost was made shortly after the crime. Also, during the assault, it was broad daylight and Frost and Perez were within eight to ten feet of each other. Frost had a clear view of Perez for about a minute. We find that under the totality of the circumstances, the out-of-court identification was admissible. The in-court identification is likewise admissible, independent of the show-up, based on Frost's ability to observe Perez at the crime scene. We find no error.
We reject without discussion the remainder of Perez's guilt-phase claims because they have no merit.[10]
Perez's remaining claims challenge his death sentence. Because we find that his death sentence must be vacated due to an error in issuing the written sentencing order, we discuss only that claim. Perez argues that the trial judge failed to provide written findings concurrently with the oral pronouncement of the sentence as required by section 921.141(3), Florida Statutes (1991).[11] *720 We agree. At the sentencing, instead of preparing a written order prior to the oral pronouncement and filing it concurrently with the oral pronouncement, the judge directed the court reporter to transcribe his oral findings and submit them for inclusion into the court file. We find that the trial court's action in this respect violated the procedural rule for written orders imposing a death sentence set forth by this Court in Grossman v. State, 525 So.2d 833, 841 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
In Grossman, we mandated that "all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement." Grossman, 525 So.2d at 841. The purpose of this requirement is to reinforce the court's obligation to think through its sentencing decision and to ensure that written reasons are not merely an after-the-fact rationalization for a hastily reasoned initial decision imposing death. Further, this Court held in Stewart v. State, 549 So.2d 171, 176 (Fla. 1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990), that "[s]hould a trial court fail to provide timely written findings in a sentencing proceeding taking place after our decision in Grossman, we are compelled to remand for imposition of a life sentence." In the instant case, although the oral findings are dictated into the record, there are no separate written findings in the record on appeal. Therefore, because the trial judge failed to issue separate contemporaneous written reasons supporting the death sentence, we are bound to vacate Perez's death sentence and remand for imposition of a life sentence.
Accordingly, we affirm Perez's convictions and sentences with the exception of the death sentence. We remand for imposition of life imprisonment without parole for twenty-five years on the first-degree murder conviction.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Perez also appeals his convictions and sentences for kidnapping and two counts of aggravated assault.
[2] § 921.141(5)(d), Fla. Stat. (1989).
[3] § 921.141(5)(h), Fla. Stat. (1989).
[4] § 921.141(5)(i), Fla. Stat. (1989).
[5] Ferguson was listed as a witness for both the prosecution and defense. Ten months before the trial, a deposition was taken to perpetuate Ferguson's testimony because she had a serious illness. In her deposition, Ferguson, who lived with Perez, testified that Perez was at home with her on the afternoon of July 14, 1990, at approximately 5:45 p.m. Other witnesses at the trial testified that it was between 2:00 p.m. and 5:00 p.m. when they learned of Devlin's abduction from outside her apartment.
[6] Florida Rule of Criminal Procedure 3.200 provides in pertinent part:

On the written demand of the prosecuting attorney, specifying as particularly as is known to the prosecuting attorney the place, date, and time of the commission of the crime charged, a defendant in a criminal case who intends to offer evidence of an alibi in defense shall, not less than 10 days before trial or such other time as the court may direct, file and serve on the prosecuting attorney a notice in writing of an intention to claim an alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or the defendant's attorney, the names and addresses of the witnesses by whom the defendant proposes to establish the alibi.
[7] At the trial, the Frosts testified that their encounter with Perez and Devlin occurred at approximately 6 p.m. or 6:30 p.m. However, at the hearing on the motion to set bond, Paul Frost testified that the incident took place at about 7 p.m. The police report indicates that the incident occurred at 6:56 p.m.
[8] We further note that Bridgette Price, the eyewitness to Devlin's initial abduction from outside her apartment in Tampa, reported to police and testified at a motion hearing that Devlin's initial abduction occurred at 6 p.m. Price testified at the trial but was not asked any questions pertaining to the time of the incident.
[9] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[10] Perez also argues that (1) he did not voluntarily waive his Miranda rights and statements made during custodial interrogation were the product of coercion; (2) he was illegally stopped; (3) his detention was not based upon probable cause and was unduly restrictive; (4) items taken from his residence were illegally seized because the evidence failed to show that his girlfriend consented and the police had no independent basis to take possession of the items in question; (5) the trial court erred by instructing the jury that if a verdict of guilty were returned, it should be for the highest offense which had been proven beyond a reasonable doubt; and (6) photographs of Devlin's body were improperly admitted.
[11] Section 921.141(3), Florida Statutes (1991), provides in part:

In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the [aggravating and mitigating circumstances] and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment... .