THOMPSON, J.
The State appeals a suppression order which excluded two out-of-court identifications of Tyrone Jackson. We reverse.
Jackson, who had been charged with armed robbery, filed a motion to suppress evidence that two witnesses identified him as the robber. He alleged that the police used unnecessarily suggestive procedures in obtaining the identifications, thus giving rise to a substantial likelihood of misidenti-fication. These facts were developed during Jackson’s motion to suppress hearing: On 10 July 1998, Richard Boyd drove into the parking lot of the Hungarian Restaurant in Daytona Beach around 1:30 p.m. As he was getting out of his car and collecting his papers, Boyd was robbed by a man who grabbed him and placed a gun to his head. The robbery was observed by Anna and Hugo Tischler, owners of the restaurant. Mr. Tischler called 911 while the robbery was in progress and described the robber as a black male and the victim as a white male; he also told the police where the robbery was occurring. During the 911 call, Boyd, who had by then entered the restaurant, took the phone from Mr. Tischler and provided additional information. He described the robber as a 200 pound, 6’ 2” black male, who was wearing either light colored or white jean shorts, a dark colored shirt and either a blue or a grey ball cap. Boyd also said the robber was wearing sunglasses and was armed with a silver .38 revolver. Further, he said the robber took his wallet and car keys, removed the money from the wallet, and returned the wallet and car keys to him. Boyd said the robber left the restaurant on foot going west toward Segrave Street. When asked by the 911 operator if he had any facial hair like a beard or mustache, Boyd said no.
Shortly after the report was made to the police, a BOLO was issued and several police cars responded and cordoned off the area near Jackson’s path. Two police officers saw Jackson walking down the street. *547 Jackson ran away when one of the officers made a U-turn and attempted to stop him. Several officers pursued him. Within 15 minutes of the crime being reported, and within one mile of the robbery, Jackson was apprehended by a police officer. The arresting officer testified that he chased Jackson through a recreation building and followed him into a carport where he saw Jackson remove a blue steel or black revolver from his waistband and put it on top of an abandoned stove. The officer apprehended Jackson, retrieved the weapon, and searched Jackson. The officer found $78.00 in the right front pocket of Jackson’s jean shorts.[1] In another pocket he found $126.75. The officer testified that the revolver was a .857 Magnum and that he found two .38 special caliber bullets in Jackson’s pocket. He testified that people often purchased .38 special ammunition because it was less expensive than .357 ammunition and did not have the kick when the weapon was discharged.
After Jackson was handcuffed, officers picked up Boyd and Mrs. Tischler and took them to where Jackson was being detained. They identified him as the man who robbed Boyd. At the time of the identification, Jackson was still in handcuffs and was the only, suspect presented for identification. Jackson was a 6’ 2” black male, and weighed 210 pounds. He was wearing a gray baseball cap, a dark shirt and light jean shorts.
During the hearing, in addition to the eyewitness testimony, the state introduced tapes of the 911 call and the police transmissions concerning the chase and arrest of Jackson. After hearing the witnesses and tapes, the court granted the motion to suppress citing the test in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and Grant v. State, 390 So.2d 341 (Fla.1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981), as the basis for his decision. The court found that the identification was inherently suggestive because the witnesses were shown only one suspect. In his order, the court stated that there were discrepancies between Jackson and the descriptions of the robber. Although Jackson’s shirt was dark, there was a Tommy Hilfiger logo on the front of the shirt which was not mentioned by the witnesses, a variance which the court considered “striking.” The court also wrote that Jackson’s shorts were light blue rather than white, and that Boyd seemed to have been unsure of his identification and needed verification of his identification.
In reviewing the decision below, this court is mindful that a trial judge’s ruling on a motion to suppress is clothed with a presumption of correctness, San Martin v. State, 717 So.2d 462 (Fla.1998), cert. denied, — U.S. -, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999), and the ruling should not be disturbed on appeal absent an abuse of discretion, see Hamilton v. State, 703 So.2d 1038, 1044 (Fla.1997), cert. denied, — U.S. -, 118 S.Ct. 2377, 141 L.Ed.2d 744 (1998). All evidence and reasonable inferences must be interpreted in a manner most favorable to sustaining the trial court’s ruling. McNamara v. State, 357 So.2d 410 (Fla.1978).
The trial court correctly acknowledged that the test in this type of case is two-pronged: “1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; and 2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable mis-identification.” Blanco v. State, 452 So.2d 520, 524 (Fla.1984)(citing Grant v. State, 390 So.2d at 343 (Fla.1980)). The court recognized the correct test, but applied it incorrectly.
The trial court determined that the show-up in this case was “impermissibly *548 suggestive.” The trial court accurately pointed out in its order that a “show-up is inherently suggestive because witnesses are shown only one suspect for identification.” Perez v. State, 648 So.2d 715 (Fla.1995). Although case law reflects that show-ups are inherently suggestive and are widely condemned, Frank v. Blackburn, 605 F.2d 910, 912 (5th Cir.1979), quashed on other grounds, 646 F.2d 902 (5th Cir.1981)(en banc), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 128 (1981), the cases do not hold that show-ups are inherently impermissible or unnecessary. Consideration must also be given to the fact that “an identification made shortly after the crime is more reliable than a later identification in court.” Blanco, 452 So.2d at 524 (quoting State v. Freber, 366 So.2d 426, 428 (Fla.1978)). Show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation. See Johnson v. Dugger, 817 F.2d 726 (11th Cir.1987). Here, the police did not aggravate the suggestiveness of the confrontation.
In the instant case, the only finding by the trial court regarding a potential aggravation of the suggestiveness of the confrontation is that Jackson was “handcuffed at a police car when viewed.” In fact, the show-up in the instant case factually is very similar to the show-up in Johnson, in that the witnesses here were transported from the crime scene to the apprehension scene, just as in Johnson. Applying Johnson to the instant ease, the observation of Jackson in handcuffs by the two witnesses could be no more prejudicial than the witness in Johnson observing the suspects in a police car. In the instant case, because there was no conduct by the police which aggravated the suggestiveness of the confrontation, the trial court erred in determining that this show-up was impermissibly suggestive. See Johnson, 817 F.2d at 729; see also Frank, 605 F.2d at 912-913.
The facts of the instant case are also strikingly similar to those in Frank. Here, Boyd and the second witness .both had a good opportunity to view Jackson, because the robbery took place in the middle of the afternoon and Jackson was very close to Boyd when the robbery took place. Secondly, as in Frank, it is fair to say that Boyd would have paid close attention to the robber who had a gun to Boyd’s head when he demanded the wallet.
Third, the description was at least reasonably accurate considering the circumstances. Boyd described a dark T-shirt, white jean shorts, sunglasses, and a gray cap. All of these descriptive characteristics were reasonably accurate as to Jackson. The trial court found that the most striking aspect of Jackson’s clothing was a Tommy Hilfiger logo, but this omission is slight in light of the accuracy of the rest of his description. Cf. Davis v. State, 683 So.2d 572, 574 (Fla. 4th DCA 1996)(wit-nesses’ failure to describe defendant’s permanently crossed eye indicates lack of opportunity to observe defendant). Although Boyd mistook the color of the gun and its make, there was testimony during the hearing that a .38 is similar to a .357, and it is reasonable for a person to mistake the color of a gun that is pointed at the person’s head. In its suppression order, the trial court stated that- “somewhere along the way there was mention of a beard.” Boyd’s 911 description, however, specifically disclaims facial hair on the robber, and the suspect’s photographs do not indicate anything more than stubble. Fourth, the time between the robbery and the show-up, 15 minutes, was even less than in Frank.
Lastly, like the circumstances of Frank, Boyd’s identification did waver. Boyd did, however, assert that Jackson was the robber, and, unlike the facts in Frank, there was a second witness who was very certain of her identification of Jackson as the robber. In light of the totality of circumstances, this show-up seems entirely reasonable. and not conducive to irreparable mistaken identification. See Freber, 366 So.2d at 428; see also Grant, 390 So.2d at *549 343 (confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability).
REVERSED and REMANDED.
ANTOON, C.J., and COBB, J., concur.

. The officer found three $20’s, two $5's and eight $l’s, exactly what Boyd had previously reported stolen.