IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MAX MAGIC GUZMAN-AVILES,

     Appellant,

v.
                                    Case No.  5D17-250

STATE OF FLORIDA,

     Appellee.

_____/

Opinion filed August 25, 2017

3.850 Appeal from the Circuit
Court for Seminole County,
Donna L. McIntosh, Judge.

Max Magic Guzman-Aviles, Quincy, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Rebecca Rock
McGuigan, Assistant Attorney General,
Daytona Beach, for Appellee.


LAMBERT, J.

Max Guzman-Aviles appeals the summary denial of his Florida Rule of Criminal

Procedure 3.850 motion for postconviction relief.  We affirm the denial of grounds three,

four, and six of his motion without further comment.  As to the remaining grounds one,

two, and five, we also affirm, but not for the reasons provided by the postconviction court.

Guzman-Aviles was charged with robbery with a deadly weapon by being in actual possession of a firearm, a first-degree felony punishable by life imprisonment,[1] and fleeing or attempting to elude a police officer, a third-degree felony.[2] Guzman-Aviles entered into a negotiated plea agreement and, consistent with this agreement, was sentenced to a ten-year mandatory minimum prison sentence for the armed robbery, followed by five years of probation, and to a concurrent five years' imprisonment for the fleeing or attempting to elude a police officer.

In his facially sufficient motion for postconviction relief, Guzman-Aviles asserted in grounds one and five that his counsel was ineffective for failing to file a pretrial motion to exclude or suppress the firearm from evidence because, according to Guzman-Aviles, the gun could not be connected to him. Guzman-Aviles specifically alleged that the gun was not found in his possession at the time of arrest, the police report does not reflect that the officer who pursued Guzman-Aviles saw him discard the firearm during the chase leading up to his arrest, the firearm was found in a public area two-and-one-half miles from where the crime occurred, and the firearm was never shown to the victim to identify it as the one used in the commission of the crime. In ground two of his motion, Guzman-Aviles alleged that his counsel was ineffective for failing to file a pretrial motion to suppress the victim's identification of Guzman-Aviles at a show-up[3] done at the arrest site because the show-up was impermissibly suggestive. Guzman-Aviles asserted that

---

[1] § 812.13(2)(a), Fla. Stat. (2012).

[2] § 316.1935(1), Fla. Stat. (2012).

[3] The show-up identification procedure differs from a line-up because the witness is presented with only one possible suspect for identification. *See Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995).

he asked counsel to file these motions, but that counsel erroneously told him that motions to suppress this evidence could not be filed. He further alleged that there was a high probability that the motions, if filed, would have been granted. Finally, Guzman-Aviles alleged that, but for his trial counsel's misadvice, he would not have entered his no-contest plea and would have insisted upon proceeding to trial.

In summarily denying the motion, the postconviction court held that because Guzman-Aviles entered a negotiated plea, "[t]he effect of [the] plea [was] to preclude an attack, by way of a post-conviction motion, on the validity of evidence or the admissibility of evidence," quoting *Parker v. State*, 603 So. 2d 616, 617 (Fla. 1st DCA 1992). The court attached to the order on appeal a copy of the plea agreement and the transcript from the change of plea hearing at which Guzman-Aviles testified that he was waiving his right to trial and to confront the State's evidence and that he was not coerced into entering the plea. The court concluded that Guzman-Aviles voluntarily entered his plea and that his motion was "simply an insufficient attack on the plea bargain," citing to *Henry v. State*, 679 So. 2d 885, 886 (Fla. 5th DCA 1996), and *Stano v. State*, 520 So. 2d 278, 279–80 (Fla. 1988) (holding that the defendant could not go behind his plea by alleging that counsel should have investigated more because entry of the plea cuts off inquiry into all that precedes it).

To the extent that the postconviction court interpreted *Stano* and *Henry* to preclude any challenges to a counsel's effectiveness following a plea, we disagree. In *Stano*, defense counsel placed on the record at the plea hearing that he had not yet received full discovery from the State and was not fully prepared to advise the defendant as to whether to proceed to trial or if the State had sufficient evidence to convict the defendant or not.

3

520 So. 2d at 280. Counsel also stated that the defendant confirmed to him that he had voluntarily confessed to law enforcement after being advised of his rights, that the defendant wanted to plea to avoid further delay, and that he did not want to proceed to trial. *Id.* Under these circumstances, the court found Stano's claim that counsel was ineffective for failure to make a proper investigation to be conclusively refuted by the record and that by insisting on pleading guilty and advising counsel that he had confessed freely and voluntarily, the defendant rendered any further investigation pointless. *Id.* at 281. In *Henry,* the defendant made a generic allegation that "his counsel was ineffective because he failed to further investigate the case." 679 So. 2d at 886. However, unlike the instant case, the defendant in *Henry* made no claim that his counsel was ineffective for failing to file a motion to suppress or how the failure to do so affected the voluntariness of his plea. In contrast, Guzman-Aviles essentially alleged that the evidence necessary for filing a motion to suppress evidence was known to his counsel but that his counsel mistakenly advised him that no motion to suppress could be filed, which Guzman-Aviles claimed to prejudicially rely upon in entering his plea.

"A trial attorney's failure to investigate a factual defense or a defense relying on the suppression of evidence, which results in the entry of an ill-advised plea of guilty, has long been held to constitute a facially sufficient attack upon the conviction." *MacKinnon v. State*, 39 So. 3d 537, 538 (Fla. 5th DCA 2010) (quoting *Williams v. State*, 717 So. 2d 1066 (Fla. 2d DCA 1998)). In *Hampton v. State*, 217 So. 3d 1096 (Fla. 5th DCA 2017), this court recently held that a postconviction court erred in determining that a defendant's no-contest plea precluded a postconviction attack on the admissibility of evidence because "a rule 3.850 motion alleging that 'trial counsel provided ineffective assistance

4

by failing to file a motion to suppress is a legally sufficient claim, which is not waived by an entry of a plea.'" 217 So. 3d at 1097 (quoting *Spencer v. State*, 889 So. 2d 868, 870 (Fla. 2d DCA 2004)). Moreover, the plea agreement attached to the order on appeal does not conclusively refute Guzman-Aviles' claim that counsel was ineffective for failing to move to suppress evidence, nor did the trial court's plea colloquy with Guzman-Aviles address any specific issues regarding the suppression of evidence. *See Zanchez v. State*, 84 So. 3d 466, 468 (Fla. 2d DCA 2012) (holding that a general plea colloquy did not refute or address the specific issue of an alleged illegal search); *Jones v. State*, 846 So. 2d 1224, 1226 (Fla. 2d DCA 2003) (stating that a defendant's confirmation of satisfaction with counsel during a generalized plea colloquy was insufficient to refute a postconviction claim based on counsel's failure to advise of a specific defense). Thus, we find that Guzman-Aviles' plea, by itself, did not preclude his ability to timely seek postconviction relief based upon the ineffective assistance of his counsel. Nevertheless, for the following reasons, we affirm the denial order under the "tipsy coachman" rule because the court reached the right conclusion. *See Lamb v. State*, 212 So. 3d 1108, 1112 (Fla. 5th DCA 2017) (applying the "tipsy coachman" rule in a rule 3.850 summary proceeding); *Foss v. State,* 24 So. 3d 1275, 1276–77 (Fla. 5th DCA 2009) (same); *Montero v. State*, 996 So. 2d 888, 890 (Fla. 4th DCA 2008) (affirming a postconviction court's denial of a rule 3.850 motion for reasons other than those given by the court in its order of denial).

A defendant seeking postconviction relief based upon the alleged ineffective assistance of counsel must plead and prove both deficient performance of counsel and prejudice to the defendant. *Grosvenor v. State*, 874 So. 2d 1176, 1178 (Fla. 2004) (citing

*Strickland v. Washington*, 466 U.S. 668 (1984)).  There is a similar two-prong test for ineffective assistance of counsel claims relating to cases resolved by a guilty or no-contest plea.  *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985).  The first prong is the same as in *Strickland*, while the second "prejudice" prong requires that a defendant demonstrate "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."  *Grosvenor*, 874 So. 2d at 1179 (quoting *Hill*, 474 U.S. at 59).  This second prong focuses the court's analysis on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.

As previously discussed, Guzman-Aviles alleged that he asked his counsel to move to suppress the firearm and the out-of-court identification but that his counsel misadvised him that he could not file these motions and that the evidence would be admissible at trial.  Guzman-Aviles claims that, but for his counsel's misadvice and deficient performance in not pursuing these motions to suppress this evidence, he would not have pleaded no contest and would have insisted on proceeding to trial. Nevertheless, a defendant's assertion of insisting on going to trial, standing alone, does not entitle a defendant to postconviction relief.  *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993)). Rather, the court evaluates such a claim from an objective standpoint, by applying the totality of the circumstances test as explained in *Grosvenor*:

> [I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and

6

the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial.

874 So. 2d at 1181–82.

Under this test, a defendant seeking postconviction relief following a plea, based upon the ineffective assistance of counsel in not pursuing or misadvising about a defense, is not required to allege and prove that he or she would have prevailed at trial on the defense. *Id.* at 1180. However, the viability of the defense and the strength of the State's case are both relevant to analyzing the credibility of a defendant's assertion in a rule 3.850 motion that the defendant would have insisted on going to trial. *Id.* at 1180–81. To that end, for a successful ineffective assistance claim based on counsel's failure to file a motion to suppress, a movant must demonstrate that there is a reasonable probability that the motion would have been granted. *Cf. Robinson v. State*, 972 So. 2d 1115, 1116 (Fla. 5th DCA 2008) (finding that a probable cause affidavit claiming that the defendant consented to a search did not conclusively refute the defendant's claim that a motion to suppress would likely have been granted, had his attorney filed one, because the trial court would have been required to make a credibility determination in deciding the motion). Applying the totality of the circumstances test to the present record, we conclude that there is no reasonable probability that Guzman-Aviles would have insisted on going to trial. Stated differently, "[w]here, under the totality of the circumstances, no objectively reasonable probability of prejudice exists, the claim may be summarily denied." *Capalbo v. State*, 73 So. 3d 838, 841 (Fla. 4th DCA 2011).

The detailed factual basis provided by the prosecutor at the change of plea hearing, based on the evidence that the State was prepared to present at trial, was that

Guzman-Aviles had answered a Craigslist ad to purchase a cellular phone and thereafter arranged to meet the seller at a local restaurant to consummate the transaction. The two met in the parking lot, and after negotiations apparently broke down, Guzman-Aviles pointed a .25 caliber semi-automatic handgun at the victim's face, who then handed over the phone. Guzman-Aviles then fled in his car. The police were immediately notified, and within moments, they had Guzman-Aviles' car in front of them. The police initiated their police lights and siren, but Guzman-Aviles did not stop his vehicle. Instead, he turned off his own headlights and led them on a high-speed chase. Then, according to Guzman-Aviles' own sworn motion, he stopped his car, jumped out and started running, ignoring the officer's loud verbal command to stop. The officer employed his taser, which hit Guzman-Aviles and caused him to drop to the pavement, where he was arrested. A separate officer, who was not involved in the chase, promptly brought the victim to the arrest site, and the victim identified Guzman-Aviles as the individual who had just robbed him at gunpoint. Two of the officers then walked back over the two-and-one-half-mile chase route and located the .25 caliber handgun near a sewer.

Guzman-Aviles argued below and asserts here that because he was not in possession of the firearm when arrested and the officer who chased him did not list in his police report that he saw Guzman-Aviles discard the gun during the chase, the gun recovered along the chase route would have been suppressed. Assuming the truthfulness of Guzman-Aviles' factual allegations, as is required when reviewing the summary denial of a rule 3.850 motion to the extent they are not refuted by the record, *See Peede v. State*, 748 So. 2d 253, 257 (Fla. 1999), and even assuming that Guzman-Aviles' legal conclusion that the gun would have been suppressed is correct, this does

8

not preclude the state from prosecuting Guzman-Aviles as charged. "Eyewitness testimony that the defendant possessed a firearm is sufficient evidence . . . that the defendant was in possession of a firearm." *Akins v. State*, 838 So. 2d 637, 639 (Fla. 5th DCA 2003) (citing *Fletcher v. State*, 472 So. 2d 537 (Fla. 5th DCA 1985); *Crump v. State*, 629 So. 2d 231 (Fla. 5th DCA 1993)). Further, "[i]t is not fatal to the prosecution if the state does not introduce the weapon into evidence." *Id.* (citing *Fletcher*, 472 So. 2d at 539).

As to the suppression of the victim's identification of Guzman-Aviles resulting from the show-up procedure used, the identification of a suspect through the show-up process is not invalid unless the police aggravate the suggestiveness of the confrontation or the procedure gives rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances. *See Blanco v. State*, 452 So. 2d 520, 524 (Fla. 1984), *receded from on other grounds by Puglisi v. State*, 112 So. 3d 1196 (Fla. 2013); *State v. Jackson*, 744 So. 2d 545, 548 (Fla. 5th DCA 1999). The factors to be considered in evaluating the likelihood of misidentification include: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at confrontation"; and (5) "the length of time between the crime and the confrontation." *Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995) (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

Based on the sworn allegations in Guzman-Aviles' motion, the crime occurred at night, with the victim standing next to the suspect's driver-side door when the suspect pointed the gun directly at the victim's head, causing him to turn over the cell phone.

9

Thus, the victim's opportunity to view the criminal and his degree of attention is apparent. *See Jackson*, 744 So. 2d at 548 ("[I]t is fair to say that [the victim] would have paid close attention to the robber who had a gun to [the victim's] head when he demanded the wallet.").[4]  Furthermore, the length of time between the robbery and the show-up was brief.  *See id.* ("Consideration must also be given to the fact that 'an identification made shortly after the crime is more reliable than a later identification in court.'" (quoting *Blanco*, 452 So. 2d at 524)).  Additionally, although Guzman-Aviles was in handcuffs when identified, "keeping a suspect in handcuffs is insufficient, without more, to invalidate a show-up."  *Jenkins v. State*, 96 So. 3d 1110, 1113 (Fla. 1st DCA 2012) (citing *Jackson*, 744 So. 2d at 548).

Guzman-Aviles' ten-year prison sentence is the lowest possible sentence that he could have received if convicted as charged, and his plea  avoided a potential  life sentence.  Guzman-Aviles also raised no challenge to the evidence supporting his conviction for fleeing or attempting to elude a police officer that, by itself, exposed him to a five-year prison sentence.  We also find sufficient the plea colloquy between Guzman-Aviles and the trial court, in which Guzman-Aviles was specifically advised of the maximum sentences that he faced if convicted as charged and the court scrupulously reviewed with Guzman-Aviles the constitutional rights that he had and waived by tendering his plea.  Finally, for the reasons just outlined, the likelihood that the gun or the victim's out-of-court identification of Guzman-Aviles would be suppressed was, at best, questionable.  Accordingly, we conclude that Guzman-Aviles' motion for postconviction

---

[4] Guzman-Aviles does not suggest or assert that the suspect was wearing a mask or was covering his face.

10

relief was appropriately denied.  In doing so, we are reminded of the following observation made thirty-eight years ago by the United States Supreme Court regarding the limitation on collateral attack with respect to convictions based on guilty pleas:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*United States v. Timmreck*, 441 U.S. 780, 784 (1979) (quoting *United States v. Smith*, 440 F.2d 521, 528–29 (7th Cir. 1971) (Stevens, J., dissenting)).

AFFIRMED.

PALMER and EVANDER, JJ., concur.

11