# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3717
Lower Tribunal No. 14CF-15853

_____

CALEB FERNANDEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
Robert Branning, Judge.

December 23, 2025

TRAVER, C.J.

Caleb Fernandez appeals the denial of one ground of his nine-ground amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, following an evidentiary hearing.[1]  We have jurisdiction.  *See* Fla. R. App. P. 9.030(b)(1)(A), 9.141(b)(3).  We do not disturb the postconviction court's conclusion that Fernandez's trial counsel performed deficiently when he misadvised

---

[1] Because Fernandez does not challenge the postconviction court's denial of his amended motion's other eight grounds, they are waived.  *See Prince v. State*, 40 So. 3d 11, 12 (Fla. 4th DCA 2010) (citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999)).

Fernandez about the number of his past felony convictions. This allowed the State to admit certified copies of these convictions into evidence for impeachment purposes. We disagree, however, with the postconviction court's conclusion that Fernandez suffered no prejudice from this error. In a trial that turned on a credibility contest over whether Fernandez possessed a gun, the State argued in closing that Fernandez's "lie" about the number of his past convictions should persuade the jury to resolve this contest in its favor. Under these specific facts, we conclude that there is a reasonable possibility that trial counsel's deficient performance affected the jury's verdict, and we remand for a new trial.

I.

A.

Following a routine traffic stop on Fort Myers Beach during spring break, law enforcement arrested Fernandez. They recovered a gun outside his car and seized marijuana and Xanax from him following a search incident to arrest. The State charged him with possession of a firearm by a convicted felon and two drug possession offenses. The operative charging document, filed three days before trial, listed two felony convictions supporting the primary charge. One was aggravated assault with a firearm.

B.

At trial, Fernandez's theory of defense was that he owned the drugs, but the gun belonged to his front-seat passenger, Shawndell McCann Joseph. He conceded that he was a convicted felon and waived his right to sever the firearm charge from the drug charges. *See State v. Vazquez*, 419 So. 2d 1088, 1091 (Fla. 1982). The trial involved a pure credibility contest between two law enforcement officers on one side and Fernandez and McCann on the other.

The State called two Lee County Sheriff's deputies to support its theory of prosecution that the gun belonged to Fernandez. Deputy Suriel Rosario testified that he was on foot patrol, looking for "anything provocative," when he saw Fernandez's car fail to yield at a pedestrian crossing. He approached the driver's side of the car, where he engaged in small talk with the car's three occupants. Within seconds, he smelled burnt marijuana and noticed that Fernandez seemed extremely nervous.

Deputy Rosario watched Fernandez put his hand into his right pocket, noticed that the pocket was "bulging," and directed Fernandez to remove his hand. Deputy Rosario handcuffed Fernandez while he was still in the car, then removed him and walked him towards the car's rear. He observed that Fernandez was "being fidgety a little bit" and again glimpsed him reach into his right pocket. Deputy Rosario testified that he saw the butt of a handgun and, almost immediately afterward, heard something metal hit the ground. He yelled "gun!" and took Fernandez to the ground.

3

Deputy Timothy Weisand testified that he arrived to support Deputy Rosario's traffic stop in "a minute." He assumed responsibility for McCann, who sat in the passenger seat, and a third passenger, who sat behind Fernandez. He also smelled burnt marijuana and eventually removed McCann from the car, patted him down, and handcuffed him. When he walked McCann to the car's rear, he heard Deputy Rosario yell "gun!" He later collected a 9mm Springfield handgun under the car's passenger side.

McCann explained that Deputy Weisand did not appear until "at some point" after Deputy Rosario approached the car. He swore that he had a 9mm Springfield in his waistband, and when Deputy Rosario removed Fernandez from the driver's seat, he removed the gun, opened the passenger door, and threw it under the car. When Deputy Weisand later arrived, he removed McCann from the car, patted him down, and handcuffed him. McCann admitted that he lied to police that day when he said he did not know who owned the gun because he feared arrest. But he admitted to the gun's ownership at trial because he was not "going to let Mr. Fernandez go down for something he didn't do, nor did he know about." McCann conceded that he had a felony conviction, but that he did not have one when the traffic stop occurred.

4

Following a colloquy[2] with the trial court, Fernandez expressed his intent to testify in his own defense. Under direct examination, he acknowledged he was a convicted felon. He also admitted that he was scared and nervous when Deputy Rosario approached his car and "fidget[ed]" when the deputy removed him from it. He insisted he was not smoking marijuana, but conceded he had marijuana in his right pocket in a film canister, along with a few Xanax pills. He maintained the gun was not his, and that it belonged to McCann. He said that Deputy Weisand did not approach the car until "less than five minutes" after Deputy Rosario arrived.

On cross-examination, the State asked Fernandez how many felony convictions he had, and Fernandez answered, "two." The State then asked the trial court at a bench conference to admit Fernandez's four certified felony convictions, including one for aggravated assault with a firearm, for impeachment purposes only. Trial counsel immediately acknowledged that he had directed Fernandez to testify that he had two convictions:

> [T]his is my fault. Shortly before going to -- up to the
> stand, Mr. Fernandez asked me to verify the number of

---

[2] Throughout the trial, the trial court engaged in multiple colloquies with Fernandez to confirm that he understood his rights. *See Grant v. State*, 326 So. 3d 204, 205 (Fla. 5th DCA 2021) (Traver, J., concurring and concurring specially) ("Mid-trial colloquies can be useful in confirming defendants' understanding of their rights. This, in turn, may preempt subsequent postconviction challenges."). It did not, however, confirm how many previous convictions Fernandez had with the parties before Fernandez testified or inform him that if he recited that agreed-upon number, the State could not admit them into evidence. This action could have mooted the issue we now resolve.

> convictions that he's had. I instructed him that it was two, because that was on the list that I did. He's -- his -- correct response would have been relying upon what I just told him right beforehand, because he was very nervous going in, and even said, "[The State's] going to ask me how many times I was convicted. How many times was I? I told him two. It's 100[%] my fault. I'm sure if [the State] brought up the four, he would correct his testimony.

Without objection, the State moved the four convictions into evidence, and the trial court advised the jury that "these are being introduced for purposes of impeachment. They're designed to test the credibility of the witness, but not as substantive evidence in the case." *See* Fla. Std. Jury Instr. (Crim.) 2.5 ("The evidence that you are about to receive that [defendant] has been convicted of a crime should be considered by you only in weighing the credibility of [defendant's] testimony and not for any other purpose.").

During redirect, Fernandez agreed that he only testified to two convictions because trial counsel told him that number. He said that he did not intend to mislead the jury. Fernandez agreed with trial counsel that trial counsel made the mistake.

In closing, the State and Fernandez each argued that the jury should believe the witnesses they called and disbelieve the other side's witnesses. In rebuttal, the State acknowledged that the parties had presented two accounts of what had occurred, but that did not justify an acquittal. It argued that the jury should not believe Fernandez's testimony because he had lied about how many convictions he had:

6

Here's what we know about the defendant, Mr. Fernandez. We know that Mr. Fernandez sat up here in front of everyone and lied. I asked him, "Have you been convicted of a felony?"

"Yes."

"How many times?"

"Two times."

"Two?["]

"Yes. Two."

He was convicted of four. He then said, "Well, my attorney told me to say two." He's the one who's convicted. He's the one who had that happen. So he said it because his attorney told him to say it? Is there anything else he said that didn't happen? We know he doesn't tell the truth.

The jury returned an as-charged verdict, specially finding that Fernandez had actual possession of the gun. The trial court sentenced him to twelve years in prison, followed by three years' supervised probation. The Second District affirmed the judgment and sentence without opinion. *Fernandez v. State*, 260 So. 3d 244 (Fla. 2d DCA 2018).

C.

Fernandez moved for postconviction relief, claiming that trial counsel had performed deficiently by misadvising him on how many convictions he had. He argued that his trial involved a credibility contest, and that when the jury learned about his past convictions, he suffered prejudice in two ways. First, the jury learned that one of his past convictions involved a gun. Second, the State called him a liar in its closing argument. He insisted that both effects led the jury to believe his was

7

the less credible account and led to his conviction. The State conceded the appropriateness of an evidentiary hearing on this claim.

At the evidentiary hearing, Fernandez testified that trial counsel told him he had two convictions, and that if he admitted he had two convictions, the State could not explore the substance of those crimes. He reiterated that trial counsel's misadvice meant that the State could introduce evidence that he had committed another gun-related offense. He said that he had stipulated to his status as a convicted felon so the State could not introduce proof of that other crime at trial. He noted that his discovery said he had two convictions, as did the operative charging document when trial began.

The prosecutor also testified. She could not recall if trial counsel had asked her how many certified copies of Fernandez's felony convictions she had, but if he did, she probably would have told him. She acknowledged that the operative charging document referenced only two convictions. Trial counsel did not testify.

The State conceded that trial counsel had performed deficiently, and the postconviction court agreed. But the postconviction court concluded that trial counsel's deficient performance had not prejudiced Fernandez. It relied on trial counsel's redirect examination, in which he took responsibility for Fernandez's incorrect testimony. The postconviction court also cited the trial court's admonition that the jury should rely on Fernandez's convictions for impeachment purposes only.

8

It concluded that despite trial counsel's error, no prejudice occurred "because the error was immediately addressed on the record in front of the jury."

## II.

To prevail on his ineffective assistance of counsel claim, Fernandez must first show that his lawyer performed deficiently. *See Moradi v. State*, 410 So. 3d 606, 614 (Fla. 6th DCA 2025) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). He must then prove that counsel's deficient performance prejudiced his defense. *See id.* (citing *Strickland*, 466 U.S. at 687). "Unless [Fernandez] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *See id.* (quoting *Strickland*, 466 U.S. at 687). Our standard of review "also is two-pronged." *See id.* (quoting *Bruno v. State*, 807 So. 2d 55, 61–62 (Fla. 2001)). We defer to the postconviction court's factual findings, but we review de novo its ultimate conclusions on deficient performance and prejudice. *See id.* (citing *Bruno*, 807 So. 2d at 61–62).

## III.

We agree with the postconviction court that trial counsel performed deficiently when he misadvised Fernandez of the number of convictions with which the State could impeach him. We disagree, however, that no prejudice ensued. In a trial turning exclusively on witness credibility, trial counsel's error damaged

9

Fernandez's credibility with the jury and allowed the State to argue that he was a proven liar. We remand for a new trial.

A.

We conclude that trial counsel's performance was deficient. We do not reach this conclusion lightly, because our scrutiny of his performance "must be highly deferential" and based on a totality of the circumstances. *See Strickland*, 466 U.S. at 688–89; *see also Patrick v. State*, 302 So. 3d 734, 741 (Fla. 2020) ("The defendant's task in proving deficiency is difficult by design." (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011))). Trial counsel's error had to be "so serious that counsel was not functioning as the 'counsel' guaranteed [Fernandez] by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. To establish deficient performance, Fernandez must show that trial counsel's "representation fell below an objective standard of reasonableness." *See id*. at 688.

Trial counsel committed an error serious enough to meet this standard. "A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment . . . ." § 90.610(1), Fla. Stat. (2016). Typically, this impeachment inquiry is restricted to the existence and number of prior convictions that meet these

parameters. *See Fotopoulos v. State*, 608 So. 2d 784, 791 (Fla. 1992) (citing *Fulton v. State*, 335 So. 2d 280, 284 (Fla. 1976)). But if the defendant denies or misstates the number of his applicable prior convictions, the state can admit certified copies of those convictions for impeachment purposes. *See Pryor v. State*, 855 So. 2d 134, 136 (Fla. 1st DCA 2003) (citing *Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995)). Only when the defendant "attempts to mislead or delude the jury about his prior convictions" may the state further ask about their nature to negate any false or misleading impression. *Fotopoulos*, 608 So. 2d at 791; *see also McCrae v. State*, 395 So. 2d 1145, 1151–52 (Fla. 1980) (no error for state to ask about nature of defendant's violent prior felony when defendant implied it was not serious offense).

Multiple courts have found deficient performance when a defendant's trial counsel did not understand this general rule and its exception. *See, e.g.*, *Moore v. State*, 74 So. 3d 547, 549 (Fla. 5th DCA 2011) (finding deficiency where state disclosed nature of past drug delivery conviction to jury in drug possession case and trial counsel did not object); *Ridenour v. State*, 768 So. 2d 480, 481 (Fla. 2d DCA 2000) (remanding for new trial where trial counsel elicited testimony about nonexistent "prior conviction"); *Wright v. State*, 446 So. 2d 208, 209 (Fla. 3d DCA 1984) (remanding for new trial when defense counsel elicited five otherwise inadmissible misdemeanor convictions in direct examination). Fernandez's situation differs from these cases because trial counsel understood the rule and its

11

exception yet misadvised a client who was uncertain of the number of his prior convictions.[3] The effect of trial counsel's underestimation of Fernandez's convictions was that the State got to negate the false impression his testimony gave to the jury by admitting his four prior convictions into evidence, through no fault of Fernandez's own. *See Pryor*, 855 So. 2d at 136 (citing *Perez*, 648 So. 2d at 719). *Cf. Jackson v. State*, 347 So. 3d 292, 301–02 (Fla. 2022) (no deficient performance when trial counsel misadvised defendant with four convictions that he had five convictions, but copies of convictions did not come into evidence and defendant's credibility had already been sharply undermined). In this fact-specific context, trial counsel performed deficiently.

---

[3] The postconviction court saw no reason to disbelieve Fernandez's testimony on this point, and we do not make credibility determinations in the first instance. *See Covington v. State*, 348 So. 3d 456, 475 (Fla. 2022) ("[T]his Court will not substitute its judgment for that of the postconviction court as to the credibility of witnesses so long as the findings are supported by competent, substantial evidence." (citing *Lowe v. State*, 2 So. 3d 21, 29–30 (Fla. 2008))). We note, though, that competent, substantial evidence supports the postconviction court's reasoning and rebuts the State's argument at trial that Fernandez should have known how many convictions he had. Fernandez and the prosecutor both testified that the operative information, filed three days before trial, showed that Fernandez had two convictions. Trial counsel also noted that Fernandez asked for confirmation of how many convictions he had right before he testified, and trial counsel admitted he misadvised him of this number. Another record might support a postconviction court's finding that a defendant should know the number of impeachable convictions he or she had, but this case does not.

B.

We conclude that because of trial counsel's deficient performance, Fernandez suffered *Strickland* prejudice.  To meet this standard, Fernandez must prove that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable."  *See Moradi*, 410 So. 3d at 615 (quoting *Strickland*, 466 U.S. at 687).  Fernandez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of this proceeding would have been different."  *See id*. (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id*. (quoting *Strickland*, 466 U.S. at 694).  "In a challenge to a criminal conviction, 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *See id*. (quoting *Strickland*, 466 at 695).

Fernandez offers two reasons why he suffered prejudice following trial counsel's error.  Both rest on the nature of his defense, which involved a credibility contest between him and McCann, on one hand, and Deputies Rosario and Weisand, on the other.  He first argues that in a trial to determine whether he possessed a gun, the jury learned he had a prior conviction involving gun possession.  He also insists that the State maximized the effect of trial counsel's error by highlighting it during

13

its closing argument and proclaiming that his lie should cast doubt on the truth of his remaining testimony.

Fernandez's first argument is unavailing because the trial court directed the jury not to consider his convictions as substantive evidence through a limiting instruction. *See* § 90.107, Fla. Stat. (2016). And "absent a contrary finding, 'juries are presumed to follow the instructions given them.'" *Moradi*, 410 So. 3d at 616 (quoting *Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000)). Fernandez cites no finding that the jury misunderstood the trial court's instruction or failed to follow it. Further, because Fernandez did not open the door to the State cross-examining him about the nature of his convictions, the State properly did not mention that information in cross-examination and closing argument. *See Fotopolous*, 608 So. 2d at 791. *Cf. Bowers v. State*, 929 So. 2d 1199, 1202 (Fla. 2d DCA 2006) (concluding appellant suffered prejudice when trial counsel's deficient performance allowed state to identify specific nature of undisclosed past convictions to jury). We conclude that in this context, Fernandez suffered no *Strickland* prejudice when one of his four prior convictions involved a gun crime because this information was not disclosed to the jury.

By contrast, Fernandez demonstrated *Strickland* prejudice by highlighting the effect of the State's closing argument in a case decided exclusively through witness credibility. *See Ridenour*, 768 So. 2d at 481 ("In light of the credibility contest

14

between the defendant and the victims, we must conclude that Mr. Ridenour met his burden of showing a reasonable probability that the outcome would have been different."); *Wright*, 446 So. 2d at 210 (finding prejudice where jury heard number of defendant's inadmissible misdemeanor convictions because of "extremely prejudicial nature of this type of evidence" and "strong and emphatic emphasis placed upon it by the state attorney in attacking the defendant's credibility in final argument"). In resolving whether Fernandez possessed a gun, the jury evaluated four witnesses' testimony. No third-party eyewitnesses testified. Neither party offered any forensic evidence like DNA or fingerprints. Neither party introduced video of the incident or a confession that the crime occurred.

Against this backdrop, Fernandez made the tactical decision to testify, admitting he was a convicted felon and conceding that the drugs police seized belonged to him, but the gun they recovered belonged to McCann. McCann's testimony supported Fernandez's theory, identifying the specific model of a handgun recovered from the ground on the car's passenger side. Trial counsel's error upended Fernandez's trial strategy, portraying him not as a felon who took accountability for some other crimes, but as a liar who deceived the jury about his criminal history. And the State invalidated trial counsel's effort to account for his error during redirect by its statements in closing. It instead highlighted the error's effect, labeling

15

Fernandez a liar on this point and suggesting that it called his entire testimony into question.  In this fact-specific context, *Strickland* prejudice occurred.

IV.

Nothing we state here should be construed as creating a per se rule about when trial counsel performs deficiently or when sufficient prejudice occurs to undermine confidence in a trial's outcome.  *See Moradi*, 410 So. 3d at 619 ("Postconviction cases analyzing *Strickland* prejudice, and the determinations that arise from them, are fact-specific, and they naturally invite comparison.").  But based on our specific record, we conclude that ineffective assistance of counsel occurred, and we remand for a new trial.

REVERSED and REMANDED with Instructions.

NARDELLA and BROWNLEE, JJ., concur.

Blair Allen, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Nicole R. Smith, Assistant Attorney General, Tampa, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED