362 So.2d 417 (1978)
Paul Stephen SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. HH-140.
District Court of Appeal of Florida, First District.
August 30, 1978.
*418 Michael J. Minerva, Public Defender, Margaret Good, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Smith appeals his conviction for the offense of sexual battery with the use of a deadly weapon. The issues in Smith's appeal turn primarily upon the reliability of the victim's in-court identification.
We must initially determine whether the pre-trial identification was impermissibly suggestive. If we so find, then the next question to answer is whether the misidentification gave rise to a substantial likelihood of irreparable misidentification, Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), so that it could not be said that the later in-court identification was grounded upon a source independent of the prior tainted identification. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Cribbs v. State, 297 So.2d 335 (Fla. 2d DCA 1974).
Prior to trial Smith moved to suppress the photographic identification previously made by the victim. Supporting his motion was the deposition testimony of the victim who stated that during the evening following the sexual assault, she was shown six photographs of suspects. She picked the photograph of the one whom she thought might be her assailant, but was unable positively to identify it. The photograph of defendant was not among the six then displayed to her. The following day she was shown four different pictures from which she selected that of defendant as the transgressor. She testified that prior to her identification, Deputy Sheriff Reaves told her he had recently taken into custody a suspect who fit "the description I gave him and that the guy had been in one of the pictures the night before and I had almost picked it up, but I wasn't sure. He said that that guy's picture was in this bunch, too."[1]
The description which the prosecutrix furnished the investigating officers was that her assailant, a white male, had a goatee and blond hair to his ears. While it does not appear in the record which of the six photographs the victim nearly made her identification, in our examination we find that the only photograph of a white male with light brown hair and a beard was that of state exhibit number five. Four of the *419 other photographs displayed men with moustaches only. Another photograph was that of a person with dark brown hair cut above his ears and face clean shaven. The photograph of defendant, marked state exhibit three, identified by the victim as her assailant, was that of a white male with blond hair to his shoulders and a clean shaven face. This photograph was taken the day following the assault after defendant had surrendered himself in to the authorities. Strangely, of all the photographs displayed to the victim only that of defendant bore the caption: "Up to fifteen years state prison Fla. Statues [sic]  843-11."
We conclude that the pre-trial procedure employed by the authorities was impermissibly suggestive, and the court should have suppressed defendant's photograph from admission into evidence. The gratuitous comments made to the victim by Deputy Reaves that the prosecutrix should disregard the suspect's facial hair because hair might be changed could have had no effect other than to focus the victim's attention upon the defendant's photograph, showing defendant unbearded. It is clear from our observation of the ten photographs that state exhibit number five, shown to the victim the night of the crime, most closely resembled the photograph of defendant. The additional comments that the photograph of a suspect who had recently been taken into custody was in the later array and that this photograph most closely resembled the one of the suspect whom she had nearly selected the night before cannot be judicially condoned. The hazards of misidentification increase if the police indicate to the witness that one of the persons pictured committed the crime. Wall, Eye-Witness Identification in Criminal Cases, 74-77 (1965). The commentator also observed, "the influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor  perhaps it is responsible for more such errors than all other factors combined." Id. at 261. And, "[r]egardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or court-room identification." Simmons v. United States, 390 U.S. at 383-384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. The prejudicial effect of the officer's comments was compounded when we consider that of all the photographs displayed to the victim only that of defendant bore the caption indicating to the victim the defendant was either a convicted criminal or charged with a crime.
Having determined that the circumstances surrounding the pre-trial photographic display were impermissibly suggestive, we now determine that the suggestiveness inherent in the showup infected as well the in-court identification of defendant. The victim never made a "live" identification of defendant during trial. Instead, on three separate occasions, she identified Assistant Escambia County Attorney John Fleming, seated at counsel table, as the perpetrator. Her only identification in court of defendant as her assailant occurred when she selected the same photograph which she had picked prior to trial.
Had there been a pre-trial line-up, which there was not, and a subsequent in-court "live" identification, the pre-trial taint may well have been mitigated. Had the victim pointed out defendant during the trial as the perpetrator, and testified that her identification was then grounded primarily upon her recollection of the aggressor's features at the time of the assault, the identification might rest upon an origin independent of the prior taint. United States v. Wade, supra. None of those factors, however, exists here. Contrast the circumstances in this case with those in Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), in which the Supreme Court held admissible an in-court identification by a witness who had a fleeting but "real good look" at his assailant in the headlights of a passing car. The witness testified at the pre-trial suppression hearing that he identified one of the petitioners among the participants in a formal lineup. The Court held that such evidence could *420 support a finding that the in-court identification was "entirely based upon observations at the time of the assault and not at all induced by the conduct of the lineup." 399 U.S. 5-6, 90 S.Ct. at 2001, 26 L.Ed.2d at 394.
Here, of course, as previously recounted, the circumstances were vastly different. The only witness to the assault was the victim, and while the victim's testimony needs no corroboration, it nevertheless must be carefully scrutinized so as to avoid an unmerited conviction. Moreover when the evidence is not substantial in character, a conviction will be reversed and a new trial ordered where such evidence is not satisfactory to establish the identity of an accused as the participant in a crime of which he has been found guilty. Tibbs v. State, 337 So.2d 788 (Fla. 1976).
This case is strikingly similar in its facts to the identification procedure which occurred in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), where a witness was called to a police station to view a lineup. He was unable to identify the defendant as the robber despite a suggestive lineup. The police arranged a second showup, at which the witness could make only a tentative identification. Finally at yet another lineup, the witness was able to make a positive identification. Five men were in the lineup and defendant was the only person in the subsequent lineup who appeared at the prior confrontation. The United States Supreme Court stated it would apply the rule announced in Simmons v. United States, supra, and held that the identification procedure was so unnecessarily suggestive and conducive to irreparable misidentification as to result in a denial of due process. The court concluded that the suggestive elements in the identification procedure made it inevitable that the witness would identify defendant whether or not he was the man, saying: "This procedure so undermined the reliability of the eyewitness identification as to violate due process." 394 U.S. at 443, 89 S.Ct. at 1129, 22 L.Ed.2d at 407.
Having considered the totality of the circumstances relating to the photographic identification of defendant both prior and during trial, we conclude that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The cause is reversed and remanded for new trial.
MILLS, Acting C.J., concurs.
CAWTHON, VICTOR M., Associate Judge, dissents.
NOTES
[1] At trial the victim stated, during direct examination, that the only comment made to her by Deputy Reaves prior to her identification of defendant was that he wanted her to be sure of her identification, and she should look at the suspects' eyes and other facial features because the hair could change.