946 So.2d 579 (2006)
Jason ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-4585.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
Rehearing Denied February 9, 2007.
*581 Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Appellant, Jason Anderson, timely appeals convictions of robbery with a deadly weapon and attempted robbery with a deadly weapon. We affirm the former conviction and reverse and remand for new trial as to the latter.
The facts material to this appeal are as follows. Benjamin Dominicis was working behind the counter at a Papa John's pizza restaurant in Hollywood when, at approximately 2:40 p.m., he suddenly noticed someone standing next to him. The man was holding a screwdriver in his hand and asked Dominicis, "Can you do me a favor and open the cash register?" Dominicis said he could not and was able to escape to the office in the back of the restaurant and call 911. Ashley Melroy, another Papa John's employee, witnessed what transpired between Dominicis and his assailant. However, Melroy could not see the man's face because he had a shirt over his head and left immediately upon seeing Melroy retrieve her cellular phone.
That same day, Julio Davalos was working as a cashier at a Shell gas station in Hollywood. At about 3:00 p.m., while Davalos was attending to customers, a man with a screwdriver in his hand approached Davalos from the side and tried to push him away from the cash register. When Davalos did not move, the man demanded that Davalos open the cash register. Davalos complied and the man took the money and left the store. Davalos saw the man's face as he left.
At that time, Sveen Zamalloa was arriving at work to relieve Davalos. As Zamalloa was parking his car, he saw someone leaving the gas station store. The person attracted Zamalloa's attention because he had something resembling a bandage on his hand and hurriedly left the store. The person came close, within four steps, of Zamalloa's car, enabling Zamalloa to look at him for roughly five seconds.
At 3:30 p.m., police officers captured a man, later identified as Anderson, believing him to be the perpetrator of the above robberies. The officers continued detaining Anderson at the location where he was caught, while other officers separately brought Dominicis, Melroy, Davalos, and Zamalloa to the site. All four witnesses positively identified Anderson as the perpetrator of either the Shell gas station or Papa John's robberies.
On appeal, Anderson argues that the trial court committed reversible error in permitting the prosecution to introduce the show-up identifications.[1] "The decision to admit a pre-trial identification is within the sound discretion of the trial court and the decision should be overturned only upon a showing of abuse of discretion." Walker, 776 So.2d at 945. "Show-up" procedures always carry some degree of suggestiveness because the witness is presented with only one suspect for identification. Perez v. State, 648 So.2d 715, 719 (Fla.1995); see also Macias v. *582 State, 673 So.2d 176, 181 (Fla. 4th DCA 1996). A show-up identification is not valid if there is a substantial likelihood of irreparable misidentification under the totality of the circumstances. See Blanco v. State, 452 So.2d 520, 524 (Fla.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953. The following factors should be considered in making this determination:
(a) the witness' opportunity to view the suspect at the time of the crime; (b) the witness' degree of attention; (c) the accuracy of the witness' prior description of the suspect; (d) the level of certainty demonstrated by the witness at the confrontation; and (e) the length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
We find that the circumstances surrounding the show-up identifications provided by Dominicis and Melroy gave rise to a substantial likelihood of irreparable misidentification. Both were brought to the show-up within approximately a half-hour of the attempted robbery of Papa John's, and both testified that they were certain the man in the show-up was the same man who attempted to rob the restaurant. However, Dominicis testified that before arriving at the show-up, the police told him that they were detaining someone who had a screwdriver and was wearing clothing fitting the description given by Dominicis. The first district condemned similar police conduct in Smith v. State, 362 So.2d 417, 419 (Fla. 1st DCA 1978) (reversing where, prior to witness identification of defendant via photo array, police officers told witness that they had recently taken into custody a suspect who fit the description witness had given them). We reiterate this admonishment and exhort law enforcement personnel to always avoid these types of suggestive pre-identification communications.
We also find that Melroy's show-up identification did not carry with it adequate indicia of reliability to merit admission into evidence, as Melroy was unable to observe the assailant's face during the attempted robbery of Papa John's. See Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony."). However, we conclude that Zamalloa's and Davalos' identifications were sufficiently reliable as both men clearly saw the person who robbed the Shell gas station and both positively identified that person as Anderson during the show-up procedure.[2]
Based on the foregoing, we conclude that of the four show-up identifications at issue, only Melroy's and Dominicis' were so unreliable that their admission violated Anderson's due process rights. Since these identifications pertained only to the charge of attempted robbery with a deadly weapon of Papa John's, we find no reason to reverse Anderson's conviction for robbery with a deadly weapon of the Shell gas station and therefore affirm that conviction. However, Melroy's and Dominicis' show-up identifications were crucial to the State's case against Anderson for the attempted robbery of the Papa John's because there were no other out-of-court identifications, or for that matter in-court *583 identifications, linking Anderson to that crime. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) ("Under the harmless error analysis, if there is a reasonable possibility that an error affected the verdict, then such error is harmful."). As such, we reverse Anderson's conviction for the attempted robbery of Papa John's and remand for new trial on that charge only. See Rohan v. State, 696 So.2d 901, 904 (Fla. 4th DCA 1997) (reversing convictions for three of five joined offenses).
We also note a possibly fatal variance contained in the information. The State mistakenly identified Jose Gutierrez rather than the Papa John's restaurant, of which Gutierrez was the manager, as the victim in Count III, i.e., the attempted robbery of Papa John's. Because we reverse Anderson's conviction as to Count III due to an improper show-up procedure, we find that the alleged discrepancy as regards the information is not dispositive in this case. However, we suggest that the State correct the information to accurately identify Papa John's as the victim upon retrial.
Affirmed in part; Reversed in part; Remanded.
KLEIN and MAY, JJ., concur.
NOTES
[1] Anderson's pretrial identification is considered a "show-up" procedure, which occurs when the police take a witness shortly after the commission of an observed crime to where they are detaining a suspect, thereby giving the witness an opportunity to identify the suspect as the perpetrator of the crime. Walker v. State, 776 So.2d 943, 945 (Fla. 4th DCA 2000) (citation omitted).
[2] Zamalloa testified that before being taken to identify Anderson, an officer told him that the police "need[ed] him to recognize someone," and that on the way to the show-up, he overheard someone on the police radio stating, "we got him." We find that these communications, individually or in aggregate, do not reach the level of impermissible suggestiveness condemned in Smith, 362 So.2d at 419, and which we now find improperly occurred as regards Dominicis.