# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-4752

_____

DANIEL HEATH WILLIS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Mark W. Moseley, Judge.

April 5, 2018

WINSOR, J.

Less than an hour after police arrested Daniel Willis for shoplifting, they realized they had the wrong man. But in the meantime, officers searched Willis pursuant to that arrest and found drugs and paraphernalia. That discovery led to drug charges and an allegation that Willis violated his probation. Willis unsuccessfully moved to suppress the evidence, contending the search was unlawful. Willis then pleaded no contest, reserving his right to appeal on the suppression issue. We now reverse.

I.

In December 2015, a shoplifter victimized the Best Buy in Gainesville's Butler Plaza. Some employees saw the perpetrator flee on foot toward the nearby Texas Roadhouse, and others saw a

Chevy Silverado leaving the scene. Police soon put out a bulletin for officers to be on the lookout for the truck and a slim white male wearing jeans and a hat. An officer spotted Willis—a slim white male wearing jeans and a hat—in the parking lot outside the Texas Roadhouse. The officer approached Willis, explained that he was a suspect in a criminal investigation, and told him to "hang out and just wait."

While the first officer detained Willis, a second officer responded directly to the Best Buy. Store employees were gathering surveillance video for review, but rather than wait for the video, the second officer drove an eyewitness (a store employee) to the spot where Willis was detained. On the short drive over, the second officer told the witness how the showup identification[1] would work: Reading from a standard form, the second officer said the witness "should not feel [he has] to make an identification" and that "[i]t is just as important to exclude innocent persons from suspicion as it is to identify the suspect."[2] But after reading the standard instructions, the second officer added that "I think this is going to be unusual. There are two people involved and this was the getaway driver, I think."

Willis was standing in front of the first officer's patrol car when the second officer drove up with the witness. Once within sight of Willis, the second officer asked the witness whether Willis was the shoplifter. From the patrol car's back seat, and some eight to ten car lengths away, the witness looked at Willis but hesitated to make a positive identification. He said that although Willis matched the general description, the clothing was not a match. He also explained that Willis's arm tattoo could not help the identification because the shoplifter had been wearing a jacket. The witness did note, though, that Willis had "a ball cap on and . . .

---

[1] A "showup identification" is when police take a witness shortly after a crime to the location of a detained suspect, allowing the witness to identify the suspect. *Anderson v. State*, 946 So. 2d 579, 582 (Fla. 4th DCA 2006).

[2] A camera mounted in the second officer's police car recorded interaction between the officer and the witness. The video was admitted into evidence below and is part of the record on appeal.

a shaved face," as did the shoplifter. While the witness continued to contemplate, the second officer asked "yes or no?" The witness said "yes."

As soon as the witness said "yes," the second officer radioed the first officer, relaying that Willis had been positively identified. The second officer then drove off with the witness, and the first officer arrested Willis. When the second officer got back to Best Buy, she learned the security footage was ready for review. Looking at the footage, she immediately realized Willis was not the shoplifter. She then drove back to the Texas Roadhouse parking lot to tell the first officer of the misidentification.

In the short time between Willis's arrest and the realization that they had the wrong man, police searched Willis and found cash, a baggie with cocaine residue, and some cut up straws in his pocket. This discovery prompted a K9 officer, already on the scene, to walk his dog near Willis's nearby truck. After the dog alerted, officers searched the truck and found forty grams of marijuana, several baggies of cocaine, and a scale with marijuana and cocaine residue.

The State charged Willis with possession of drugs and possession with intent to distribute, and Willis moved to suppress all evidence found as a result of the arrest, arguing that the showup identification that set everything in motion was impermissibly suggestive. The court denied that motion.

II.

The Florida Supreme Court has said that "a show-up is inherently suggestive because a witness is presented with only one suspect for identification." *Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995). Nonetheless, evidence from a showup identification is admissible if "despite its suggestive aspects, the out-of-court identification possesses certain features of reliability." *Grant v. State*, 390 So. 2d 341, 343 (Fla. 1980) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110 (1977)); *accord Perez*, 648 So. 2d at 719 ("[A] show-up is not invalid if it does not give rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances.").

Florida courts apply a two-step test to determine the admissibility of an out-of-court identification: "(1) did the police employ any unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." *Grant*, 390 So. 2d at 343 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). As to the first step, we conclude the showup process at issue here was unnecessarily suggestive. The second officer's comment—"this was the getaway driver, I think"—suggested that Willis was involved in the crime. *See, e.g., Anderson v. State*, 946 So. 2d 579, 581 (Fla. 4th DCA 2006) (showup was impermissibly suggestive when perpetrator used screwdriver in robbery and, before showup, police informed witnesses that detained suspect had been carrying a screwdriver); *Davis v. State*, 683 So. 2d 572, 574 (Fla. 4th DCA 1996) (officer's statement that "I think we caught them, but you need to properly identify them" was improperly suggestive) *abrogated on other grounds by Diaz v. State*, 980 So. 2d 1275 (Fla. 4th DCA 2008). As the trial court recognized, the comment was improper and "certainly would bolster someone's willingness to say, yeah, that's the guy I saw."

Turning to the second step, we must consider whether, under the totality of the circumstances, the identification process was reliable despite the unnecessarily suggestive procedure. The State has the burden to prove reliability by clear and convincing evidence. *Johnson v. State*, 717 So. 2d 1057, 1063 (Fla. 1st DCA 1998). Relevant factors for determining the reliability include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Perez*, 648 So. 2d at 719 (quoting *Biggers*, 409 U.S. at 199); *accord Walton v. State*, 208 So. 3d 60, 66 (Fla. 2016) (citations omitted) *reh'g denied*, SC13-1652, 2017 WL 203617 (Fla. Jan. 18, 2017). Applying these factors to the facts of this case, we conclude the State did not meet its burden.

4

Although the witness saw the shoplifter in the Best Buy, the witness never saw a second suspect or a vehicle. The officer knew this when she took the witness to the Texas Roadhouse for the identification, yet she suggested Willis was a getaway driver. The witness offered no description of the shoplifter before misidentifying Willis, so there is no way to compare any pre-identification description to Willis's actual description. And perhaps most critically, the witness displayed little certainty that Willis was the man he saw. Both the witness and the officer testified that the witness was initially hesitant to make a positive identification. Indeed, after viewing Willis at the showup, the witness's initial observation was that Willis was not wearing a jacket but the shoplifter had been. *Cf. Walton*, 208 So. 3d at 66 ("[W]e conclude that [the witness] did not display a high level of certainty when she identified Walton."). The video from the in-car camera shows that while the witness was contemplating the similarity of the suspect in custody to the suspect he observed, the officer abruptly interjected and asked, "yes or no?" Only after this interjection did the witness positively identify Willis. The officer never asked the witness how confident he was in his identification; instead, she immediately drove off, preventing any further contemplation.[3]

## III.

Considering the totality of the circumstances on the particular facts of this case, we conclude the showup identification lacked sufficient indicia of reliability to overcome the unnecessarily suggestive procedure through which it was obtained. The trial court therefore should have suppressed all evidence obtained as a result of the misidentification.

---

[3] The witness testified at the suppression hearing that when he identified Willis, he worried about the fact that Willis had no jacket because the jacket was what he remembered most about the shoplifter. The witness also testified that he was only "somewhat confident" in his identification, but that he was confident at the time that police knew what they were doing and would not have asked him to make an identification unless they were "pretty sure" that they had detained the right person.

5

The State acknowledges that without the misidentification, officers would have lacked probable cause to arrest Willis. Without the arrest, officers would have lacked justification to search Willis's person and would not have found paraphernalia in Willis's pocket. And without the paraphernalia, police would not have been prompted to walk their dog around Willis's truck, nor would they have had probable cause to search the truck.[4] We therefore reverse the order denying Willis's motion to suppress. On remand, the trial court should vacate Willis's convictions and reinstate his probation.

REVERSED and REMANDED.

BILBREY and M.K. THOMAS, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

Rodney W. Smith and Jesse Smith of Avera & Smith, LLP, Gainesville, for Appellant.

---

[4] As the trial court explained, during the time Willis was lawfully detained before the showup, his truck was parked in a public parking lot, so there was nothing stopping officers from conducting a K9 sniff. A positive alert would have provided probable cause to search the truck, and Willis likely would have wound up with the same charges and convictions. But the record shows that the K9 sniff did not occur until after—and only as a direct result of—Willis's arrest and the discovery of drug paraphernalia in his pocket. Suppression of the evidence found in the vehicle is therefore required. *See Moody v. State*, 842 So. 2d 754, 759 (Fla. 2003) (suppression required when an "initial arrest set[s] in motion an unbroken chain of events, which include[s] the discovery of" additional evidence).

Pamela Jo Bondi, Attorney General, and Sharon Traxler, Assistant Attorney General, Tallahassee, for Appellee.