# Supreme Court of Florida

_____

No. SC2021-1450
_____

**ZAVION ALAHAD,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

June 1, 2023

LABARGA, J.

We have for review the decision of the Fourth District Court of

Appeal in _Alahad v. State_, 326 So. 3d 1142 (Fla. 4th DCA 2021). In

_Alahad_, the district court affirmed the trial court's denial of Zavion

Alahad's motion to suppress eyewitness identifications resulting

from an out-of-court police procedure, and in doing so, applied the

abuse of discretion standard of review to the trial court's ruling on

the eyewitness's out-of-court identification. _Id._ at 1143. _Alahad_

expressly and directly conflicts with a decision of this Court in

_Walton v. State_, 208 So. 3d 60 (Fla. 2016), and with a decision of

another district court in *McWilliams v. State*, 306 So. 3d 131 (Fla. 3d DCA 2020); in each of the conflict cases the court applied a de novo standard of review to trial court rulings on the same issue. Moreover, as we will explain, this Court's *Walton* decision was itself inconsistent with previous decisions of our Court on the conflict question. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

For the reasons discussed below, we hold that the proper standard of review is abuse of discretion review. We also agree with the Fourth District's analysis of the merits under that standard. Consequently, we approve *Alahad*; clarify our Court's inconsistent case law in this area; and disapprove *McWilliams* to the extent that it applied de novo review to trial court rulings on motions to suppress out-of-court identifications.

## FACTS AND PROCEDURAL HISTORY

Alahad was convicted of second-degree murder and attempted robbery with a firearm. *Alahad,* 326 So. 3d at 1143. Alahad had been outside a convenience store around noon when Loretta Matthews, the eyewitness, arrived with her boyfriend, the victim. While Matthews waited in her car, the victim exited the store and was confronted by Alahad. Matthews first saw the victim and

Alahad when they were ten to fifteen feet away from the car. Alahad grabbed the victim and demanded his money, and during the struggle the two reached the hood of the car. The victim fell on his back, and Alahad shot and killed him. Alahad ran from the scene.

Matthews told police that the shooter was "a black male, approximately 5 [feet] 10 [inches], 125 pounds, skinny, in his twenties or younger, and [] wearing a gray sweatshirt"; that she "got a good look at" the shooter's face; and that if she saw the shooter again, she would be able to fully identify him. *Id.* at 1144. She also showed police the area where she saw the shooter run. Later that afternoon, a woman reported to police that Alahad, whom she identified by name, had run through her yard with a firearm and was currently in a nearby apartment.

At the apartment, police found Alahad and several other men. Alahad and Adrian Nixon, one of the other men, both matched Matthews's description. Alahad was "a black male, 5 [feet] 9 [inches], seventeen years old, and weighed 150 pounds." *Id.* Nixon was "twenty-five years old, 5 [feet] 8 [inches] or 5 [feet] 9 [inches], and very thin but muscular." *Id.* Both also had facial markings. Nixon had two teardrop tattoos on the right side of his

face, and Alahad had a "teardrop-shaped birthmark or scar" in the same place. *Id.*

About three hours after the shooting, the police contacted Matthews and arranged to conduct a show-up, explaining that they would show her "a guy from [her] description." *Id.* (alteration in original).[1] Because of the identifying information from the woman who reported Alahad running through her yard, Alahad was the only person shown to Matthews at the show-up. Matthews identified Alahad as the shooter from approximately thirty feet away. She stated that she was "pretty positive" Alahad was the shooter, and when asked if she was one hundred percent sure, she replied "yes." *Id.*

Claiming a violation of his due process rights, Alahad moved before trial to suppress Matthews's out-of-court identification at the show-up and any in-court identification by her. Alahad argued that the identifications resulted from an unnecessarily suggestive show-

---

1. In a show-up procedure, "the police take a witness, shortly after the commission of an observed crime, to where the police are detaining the suspect, in order to give them an opportunity to make an identification." *Walker v. State*, 776 So. 2d 943, 945 (Fla. 4th DCA 2000).

up that gave rise to a substantial likelihood of irreparable misidentification. At the suppression hearing, Matthews testified about her view during the shooting and what police told her before the show-up:

> When the shooter first approached the victim near [Matthews's] passenger door, [she] "couldn't really see the face too much then but [she] saw clothes until they [moved] around the car." When he ran up to the victim, the shooter had the hoodie covering his hair, and she initially only saw him from the side. She saw the shooter's face when the victim fell to the ground. She saw his whole face "straight"; he was facing the untinted front window of her car. She explained that, when the shooter fired the gun, "I sat back in the seat and observed what was -- what should be my next move. I was scared to -- it happened so fast that my first thought really was to pay attention to who was doing this to him and I paid attention to the face." She estimated that she saw his face for three or four minutes, "[p]robably more," but she was not sure. It was "[n]ot just a piece, not just the side," but "the whole face," and she "concentrated on it."
>
> [She] testified that, prior to the show-up, the law enforcement officers told her that they found someone who matched the description that she gave, and she initially denied that the officers told her that they found him in the area where she said he went. However, after being confronted with her prior deposition testimony, she stated that the officers told her that they found him in the area to which she said the shooter ran.

*Id.* at 1145 (several alterations in original).

Two of the detectives involved in the show-up, Detective Almanzar and Detective Novak, testified at the suppression hearing. Detective Novak testified that he may have told Matthews that the suspect matched her description, and Detective Almanzar testified that he did tell her this information. However, Detective Novak testified that he did not tell Matthews that Alahad was found in the area where she said the shooter ran, and Detective Almanzar testified that he did not recall doing so.

Matthews further testified that at the show-up, the suspect stood with an officer on each side of him. She also stated that she could not remember whether he was wearing handcuffs. Detective Almanzar testified that she did not hesitate when she identified the suspect as the shooter, and that she stated that she believed the shooter had a tear-shaped tattoo under his right eye. In her testimony, Matthews admitted making this statement at the show-up; she did not tell it to police in her initial description. The trial court denied the motion to suppress.[2]

---

2. The trial court did not reach the inquiry for the in-court identification because it found the out-of-court identification admissible.

On appeal to the Fourth District, Alahad raised multiple issues, including that the trial court erred in denying his motion to suppress Matthews's out-of-court identification. In setting forth the standard of review applicable to a trial court's ruling on a motion to suppress, the district court stated that "appellate courts must accord a presumption of correctness to the trial court's determination of the historical facts, but must independently review mixed questions of law and fact that ultimately determine the constitutional issues arising in the context of the Fourth Amendment." *Id.* at 1146 (quoting *Walton,* 208 So. 3d at 65 (citation omitted)).

However, despite setting forth this mixed standard of review, the district court further stated that "[t]he decision to admit a pre-trial identification is within the sound discretion of the trial court and the decision should be overturned only upon a showing of abuse of discretion." *Id.* (quoting *Walker v. State,* 776 So. 2d 943, 945 (Fla. 4th DCA 2000)).

Although it noted that the trial court's determination was "likely a close call," the district court affirmed "[d]ue to the abuse of discretion standard of review." *Id.* at 1147. Alahad argued that the

- 7 -

show-up was unnecessarily suggestive because (1) Alahad "was in handcuffs and flanked by two officers," (2) police told Matthews that Alahad matched her description and that he was found in the area she saw him run to, and (3) Alahad was the only person included in the show-up even though Nixon also matched Matthews's description. *Id.* at 1146-47.

The district court rejected Alahad's first argument, stating that standing alone, the presence of officers or handcuffs is not enough to make a show-up unnecessarily suggestive. *See id.* at 1147 (citing *State v. Jackson,* 744 So. 2d 545, 548 (Fla. 5th DCA 1999)). Declining to hold that "no reasonable judge would rule otherwise," the district court held on Alahad's second argument that the show-up was not unnecessarily suggestive from the police's statement that the suspect matched Matthews's description. *Id.* at 1147-48. The district court reasoned that the statement that Alahad "matche[d] the description" was vaguer than the statements police made in cases where courts found procedures unnecessarily suggestive. *Id.* at 1147 (citing *Anderson v. State,* 946 So. 2d 579, 582 (Fla. 4th DCA 2006); *Smith v. State,* 362 So. 2d 417, 418-19 (Fla. 1st DCA 1978)).

Noting that Alahad's third argument presented "the most troubling fact," the district court still held that "[r]easonable minds could differ" as to whether the police's failure to include Nixon in the show-up rendered the procedure unnecessarily suggestive. *Id.* However, the district court reasoned that the neighbor's report identifying Alahad by name gave police a basis to focus on him for the show-up. *Id.* at 1148. Because it concluded that the show-up was not unnecessarily suggestive under the abuse of discretion standard of review, the district court did not reach the second part of the out-of-court identification analysis—whether the unnecessarily suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Id.* (citing *Davis v. State,* 207 So. 3d 177, 207 (Fla. 2016)).[3]

Our review follows.

## ANALYSIS

This case requires us to clarify the proper standard of review for trial court rulings on motions to suppress out-of-court identifications made during police procedures. In doing so, we

---

3. Without discussion, the district court also affirmed Alahad's other arguments on appeal.

review the Fourth District's decision de novo. *See Van v. Schmidt*, 122 So. 3d 243, 252 (Fla. 2013) (stating that whether the district court applied the proper standard of review "present[ed] a pure question of law").

Previously, we have applied two different standards to trial court rulings on out-of-court identifications. In some earlier decisions, we applied abuse of discretion review. *See Thomas v. State*, 748 So. 2d 970, 981 (Fla. 1999); *Gorby v. State*, 630 So. 2d 544, 546 (Fla. 1993); *Hayes v. State*, 581 So. 2d 121, 125 (Fla. 1991). In more recent decisions, we applied a mixed standard of review; we gave a presumption of correctness to the trial court's factual findings but reviewed the ultimate question of law de novo. *See Walton*, 208 So. 3d at 65; *Fitzpatrick v. State*, 900 So. 2d 495, 517 (Fla. 2005).[4] Our precedent therefore reveals that while we have been consistently deferential to the trial court's factual

---

4. De novo review is independent review of the application of the law to the facts. *See Connor v. State*, 803 So. 2d 598, 606 (Fla. 2001) (quoting *Ornelas v. United States*, 517 U.S. 690, 697-98 (1996)). Under abuse of discretion review, "[i]f reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980).

findings regarding an out-of-court identification, we have not firmly espoused how Florida appellate courts should review application of the law to those facts.

We conclude that abuse of discretion review is the proper standard of review because here, the application of the law to fact is a determination of the ultimate reliability of a piece of evidence—the out-of-court identification. We reach this conclusion after summarizing the general law on out-of-court identifications, examining the nature of the trial court's ruling, and considering the conflict cases. We also agree with the Fourth District that in the present case, the trial court did not abuse its discretion in admitting the out-of-court identification.

## I. General Law on Out-of-Court Identifications

To determine whether an out-of-court identification made during a police procedure should be suppressed, the trial court conducts a two-prong test: "(1) [D]id the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification[?]" *Grant v. State*, 390 So. 2d 341, 343

- 11 -

(Fla. 1980) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110 (1977)). If on balance the corrupting effect of the suggestive procedure outweighs the reliability of the identification, then there is a substantial likelihood of irreparable misidentification. *See Manson v. Braithwaite*, 432 U.S. 98, 114-16 (1977). In that instance, the out-of-court identification should be suppressed. *See id.*

Across different types of police procedures, there is no bright-line rule to determine whether the procedure was unnecessarily suggestive. A line-up or photograph spread can be unnecessarily suggestive depending on its composition. *Way v. State*, 502 So. 2d 1321, 1323 (Fla. 1st DCA 1987). Moreover, a show-up "is inherently suggestive because a witness is presented with only one suspect for identification." *Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995). However, a show-up "[is] not *unnecessarily* suggestive unless the police aggravate the suggestiveness of the confrontation." *State v. Jackson*, 744 So. 2d 545, 548 (Fla. 5th DCA 1999) (citing *Johnson v. Dugger*, 817 F.2d 726 (11th Cir. 1987)).

To determine whether an unnecessarily suggestive procedure gave rise to a substantial likelihood of irreparable misidentification, the trial court considers the following:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Grant*, 390 So. 2d at 343 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

This Court has stated that "[t]he primary evil to be avoided in the introduction of an out-of-court identification is a very substantial likelihood of misidentification" and that "[a]n impermissibly suggestive identification procedure is one that creates the danger of misidentification so great that it violates due process." *Walton*, 208 So. 3d at 65 (citing *Simmons v. United States*, 390 U.S. 377, 386 (1968)). An out-of-court identification resulting from an unnecessarily suggestive procedure "is not *per se* inadmissible, but may be introduced into evidence if found to be reliable and based upon the witness' independent recall." *Edwards v. State*, 538 So. 2d 440, 442 n.5 (Fla. 1989). If it concludes that the procedure was not unnecessarily suggestive, then the trial court does not need to move to the second prong of the test. *Fitzpatrick*, 900 So. 2d at 518.

In sum, an unnecessarily suggestive procedure is impermissibly suggestive if the resulting out-of-court identification is unreliable under the totality of the circumstances.[5]  Reliability "is the linchpin in determining the admissibility of identification testimony . . . ."  *Manson*, 432 U.S. at 114.

## II.  The Nature of the Trial Court's Ruling

This Court has stated that "[s]uppression issues are extraordinarily rich in diversity and run the gamut from (1) pure questions of fact, to (2) mixed questions of law and fact, to (3) pure questions of law" and that "the proper standard of review depends on the nature of the ruling in each case."  *State v. Glatzmayer*, 789 So. 2d 297, 301 (Fla. 2001).

The issue of whether to suppress an out-of-court identification presents a mixed question of law and fact because the two-prong test requires application of the law to historical facts.  *See Walton*, 208 So. 3d at 65 (treating the trial court's ruling on the issue as a

---

5.  We recognize that some courts have used interchangeably the terms "unnecessarily" and "impermissibly" when referring to the first prong.  *See Johnson*, 817 F.2d at 729 ("Under these circumstances, Jordan's out-of-court identification was not unreliable even if it had been impermissibly suggestive . . . .").

- 14 -

mixed question of law and fact); *Connor v. State*, 803 So. 2d 598, 606 (Fla. 2001) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112-15 (1995)) (stating that an ultimate determination involving application of the law to the historical facts presents a mixed question of law and fact).

Historical facts, or factual findings, address "scene- and action-setting questions." *See Connor*, 803 So. 2d at 606 (quoting *Thompson*, 516 U.S. at 112-15). In other words, historical facts define "who did what, when or where, how or why." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018) (citing *Thompson*, 516 U.S. at 111, 116). For the unnecessarily suggestive prong, the historical facts may include any relevant circumstances of the procedure; the existence of any exigent circumstances, how police presented the suspect, and what police said to the eyewitness before and during the procedure are likely factual findings. For the substantial likelihood of irreparable misidentification prong, the historical facts may include circumstances of the eyewitness's observation such as how close the eyewitness was to the suspect at the time of the crime; the angle at which the eyewitness viewed the suspect; the

- 15 -

eyewitness's description of the suspect; the suspect's actual physical characteristics; and any other relevant circumstances.

The ultimate determination for the trial court is a mixed question of law and fact, *see Sumner v. Mata*, 455 U.S. 591, 597 (1982), which involves application of a legal rule to certain historical facts, *see United States v. Constant*, 814 F.3d 570, 576 (1st Cir. 2016). Although mixed questions of law and fact are often reviewed under the mixed standard of review, not all mixed questions should be reviewed under that standard. *See U.S. Bank*, 138 S. Ct. at 967 ("Mixed questions are not all alike.").

Indeed, we review some mixed questions under the mixed standard and others for abuse of discretion. *See, e.g.*, *Johnson v. State*, 969 So. 2d 938, 946 (Fla. 2007) (stating that the validity of a challenge for cause "is a mixed question of law and fact, on which a trial court's ruling will be overturned only for 'manifest error.' 'Manifest error' is tantamount to an abuse of discretion.") (citations omitted); *Connor*, 803 So. 2d at 608 (holding that the mixed standard of review applies to mixed questions "that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the

Florida Constitution"); *Stephens v. State*, 748 So. 2d 1028, 1031-32 (Fla. 1999) (holding that the mixed standard of review applies to ineffective assistance of counsel claims); *Singer v. State*, 109 So. 2d 7, 22 (Fla. 1959) (stating that the competency of a challenged juror is a question "of mixed law and fact to be determined by the trial judge in his discretion"). And on the mixed question before us, the federal circuits are divided; some apply abuse of discretion review to the application of law to fact while others apply de novo review to at least part of the application. *See, e.g., Constant*, 814 F.3d at 576-77 (abuse of discretion review); *Cikora v. Dugger*, 840 F.2d 893, 895-97 (11th Cir. 1988) (clearly erroneous review for the unnecessarily suggestive prong and de novo review for the ultimate reliability determination). Therefore, we must clarify the proper standard of review for this mixed question given the nature of the ruling.

We conclude that out-of-court identification suppression is chiefly about reliability—a determination that belongs in the trial court. Notably, we ask, "[W]hich kind of court ([trial] or appellate) is better suited to resolve [the mixed question]?" *U.S. Bank*, 138 S. Ct. at 966. To start, the two-prong test for ruling on an out-of-court

- 17 -

identification is analytically similar to the balancing test for ruling on the admissibility of evidence under section 90.403, Florida Statutes (2022). We review section 90.403 rulings for abuse of discretion. *Murray v. State*, 3 So. 3d 1108, 1124 (Fla. 2009); *Mansfield v. State*, 758 So. 2d 636, 648 (Fla. 2000).

In a section 90.403 analysis, the trial court excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." § 90.403, Fla. Stat. Just as the trial court determines under section 90.403 whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, the trial court determines under the out-of-court identification test whether the reliability of the identification is outweighed by its corrupting effect. *Manson*, 432 U.S. at 114 ("Against these [reliability] factors is to be weighed the corrupting effect of the suggestive identification itself.").

The mixed question presented by a trial court's ruling on a motion to suppress an out-of-court identification is properly subject to the abuse of discretion standard of review, which respects the trial court's superior point of view. *See Sims v. Brown*, 574 So. 2d 131, 133 (Fla. 1991) ("The weighing of relevance versus prejudice or

confusion is best performed by the trial judge who is present and best able to compare the two.").

Moreover, whether the ruling involves "primarily legal or factual work" indicates which court is better suited to answer the mixed question. *See U.S. Bank*, 138 S. Ct. at 967. Appellate courts review de novo mixed questions that require legal clarification. *Id.* However, appellate courts typically review with deference mixed questions that amount to factual findings—a task for trial courts. *See id.* Examining each prong of the trial court's out-of-court identification analysis shows that here, the application of the law to historical fact is primarily factual work.

### A. Unnecessarily Suggestive

Although the phrase "unnecessarily suggestive" carries legal overtones, the trial court's determination on this prong is essentially a factual inquiry. No clear rule exists for determining whether an out-of-court identification procedure is "unnecessarily" suggestive.[6] The trial court's conclusion for this prong often turns

---

6. Some courts have listed exigency as a specific consideration for show-ups. *See, e.g.*, *Amador v. Quarterman*, 458 F.3d 397, 414 (5th Cir. 2006) ("[S]how ups often will not violate a defendant's due process rights when they are performed out of

on whether police did or did not take particular actions. For line-ups and photograph spreads, the trial court analyzes how police composed the line-up or spread. *See Way*, 502 So. 2d at 1323. For show-ups, the trial court analyzes whether police aggravated the inherent suggestiveness of the procedure. *See Perez*, 648 So. 2d at 719; *Jackson*, 744 So. 2d at 548. The trial court may also consider the presence of any corroborating evidence. *See Alahad*, 326 So. 3d at 1148 ("A neighbor identified the defendant by name, so law enforcement had a legitimate basis to zero in on the defendant for a show-up.").

Because the trial court is better positioned to find facts, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 233 (1991), it is likewise better positioned to conclude that a procedure was unnecessarily suggestive. For example, unnecessary suggestiveness may turn on whether police made a statement to the eyewitness that the suspect in a show-up would match the eyewitness's specific description. *See Anderson v. State*, 946 So. 2d 579, 582 (Fla. 4th DCA 2006).

---

necessity or urgency . . . ."); *McWilliams*, 306 So. 3d at 135 ("The record below remains undeveloped as to any emergent or exigent circumstances that would necessitate the use of such a procedure.").

The trial court is better positioned than the appellate court to determine whether the statement was or was not made, and if so, how it was made.

Moreover, the Eleventh Circuit held in *Cikora* that trial court conclusions on this prong require deference. 840 F.2d at 895-96. In *Cikora*, the Eleventh Circuit distinguished the unnecessarily suggestive prong from the "ultimate question" of constitutionality—the question of reliability. *Id.* at 896 (quoting *Sumner*, 455 U.S. at 597).[7] Relying on *Sumner*, the federal circuit court treated the unnecessarily suggestive prong as involving "questions of fact that underlie this ultimate conclusion . . . ." *Id.* (quoting *Sumner*, 455 U.S. at 597).

For all these reasons, we believe that a trial court's decision on the unnecessarily suggestive prong of the inquiry should be reviewed for abuse of discretion.

## B. Substantial Likelihood of Irreparable Misidentification

If the trial court determines that a show-up is unnecessarily suggestive, and thus, must reach the substantial likelihood of

---

7. The court stated that the ultimate conclusion was subject to "plenary" (de novo) review. *Id.* at 895.

irreparable misidentification prong, the trial court must then determine the overall reliability of the out-of-court identification. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972) ("We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."). On this prong, the trial court analyzes the reliability factors to weigh the corrupting effect of the suggestive procedure against the reliability of the identification. *See Manson*, 432 U.S. at 114-16. The trial court's determination on the overall weighing should receive deference not only because it is similar to a section 90.403 weighing, but also because the assessment of the reliability factors is primarily a factual analysis.

The reliability factors raise highly-specific questions of fact. The first two factors relate to the eyewitness's observation at the time of the crime. The first factor, the opportunity of the witness to view the criminal at the time of the crime, may involve facts such as the angle at which the witness viewed the criminal and how close the two were to each other. *See McWilliams*, 306 So. 3d at 136 (determining that the witness had ample opportunity to view the criminal at the time of the crime when the two stood "face-to-face"

and there was no distance between them).  The second factor, the witness's degree of attention, may involve facts such as the interaction between the witness and the criminal and the lighting in the space.  *See Fitzpatrick*, 900 So. 2d at 518 (determining that the witness had a sufficient degree of attention when he had a conversation with the appellant in a well-lit room).  For this factor, the trial court may also consider the quality of the witness's memory.  *See Walton*, 208 So. 3d at 66 ("Gillan's hazy memory of the incident does not give us confidence in her identification of Walton.").

The third factor, the accuracy of the witness's prior description of the criminal, is a comparison of historical facts; the trial court compares what the witness told police with the suspect's actual physical characteristics.  *See McWilliams*, 306 So. 3d at 136.  The last two factors relate to the identification procedure.  The fourth factor, the level of certainty demonstrated by the witness at the confrontation, involves the facts of what the witness said and how the witness conveyed their statements.  *See id.* (determining that the witness showed certainty when she conveyed the identification statement with a "visceral reaction" and repeated her assurance).

The fifth factor, the length of time between the crime and the confrontation, is a basic historical fact. The trial court is undoubtedly better-positioned than the appellate court to find the above facts and any other relevant facts under the totality of the circumstances approach.

In *Constant*, the First Circuit observed that in the context of rulings on the admissibility of identification evidence, abuse of discretion review is really "an assessment of 'reasonableness' in the district court's fact-bound application of the law." 814 F.3d at 576.[8] The court aptly noted:

---

8. *Constant* involved an in-court identification. *Id.* The standard of review that applies to suppression of out-of-court identifications would apply equally to suppression of resulting in-court identifications. After determining that the out-of-court procedure was unnecessarily suggestive, the trial court considers whether a challenged in-court identification is "reliable and based solely upon the witness' independent recollection of the offender at the time of the crime, uninfluenced by the intervening illegal [procedure]." *Edwards*, 538 So. 2d at 442. This consideration is essentially the substantial likelihood of irreparable misidentification prong. Although some Florida courts use seven slightly different reliability factors for in-court identifications, *see, e.g.*, *State v. Dorsey*, 5 So. 3d 702, 706 (Fla. 2d DCA 2009) (citing *Edwards*, 538 So. 2d at 442), we have stated that these factors are "substantially the same" as the five *Neil* factors for out-of-court identifications. *Edwards*, 538 So. 2d at 443 n.6. The alternate Florida factors are:

All that remains unclear, in sum, is whether we ask whether the district court's application of law to fact was reasonable, or whether we ask whether we would have reached the same conclusion. We opt for the more deferential formulation. Simply put, gauging the reliability of a witness's testimony in a case like this is precisely the type of judgment that trial judges are both well-equipped and well-positioned to make.

*Id.* at 576-77.

We agree with this reasoning. The ultimate application of the law to fact on the second prong—the weighing of the corrupting effect against the reliability factors—is both a primarily factual analysis and one similar in nature to that of section 90.403 determinations. Abuse of discretion review of out-of-court

---

the prior opportunity the witness had to observe the alleged criminal act; the existence of any discrepancy between any pretrial [procedure] description and the defendant's actual description; any identification prior to the [procedure] of another person; any identification by picture of the defendant prior to the [procedure]; failure to identify the defendant on a prior occasion; any time lapse between the alleged act and the [] identification [made during the procedure]; and any other factors raised by the totality of the circumstances that bear upon the likelihood that the witness' in-court identification is not tainted by the illegal [procedure].

*Id.* at 443.

identification rulings respects the trial court's superior ability to apply the law to the facts in this context.

### III. Conflict Cases

We now turn to the express and direct conflict with *Walton* and *McWilliams*. Although both decisions applied the mixed standard of review, neither analyzed whether the mixed standard is the appropriate standard of review for rulings on motions to suppress out-of-court identifications.

In *Walton*, the petitioner was convicted of two counts of attempted murder of a law enforcement officer with possession and discharge of a firearm and two counts of attempted armed robbery with possession of a firearm. 208 So. 3d at 63. The trial court had denied the petitioner's motion to suppress an out-of-court identification made during a photograph array procedure. *Id.* The First District affirmed the convictions without discussing the identification suppression issue. *Walton v. State,* 106 So. 3d 522, 523 (Fla. 1st DCA 2013). On discretionary review, we stated that "a trial court's ruling on a motion to suppress is a mixed question of law and fact that determines constitutional rights" and quoted the mixed standard of review:

> In reviewing a trial court's ruling on a motion to suppress, appellate courts must accord a presumption of correctness to the trial court's determination of the historical facts, but must independently review mixed questions of law and fact that ultimately determine the constitutional issues arising in the context of the Fourth Amendment. *See Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001); *Stephens v. State*, 748 So. 2d 1028, 1032 (Fla. 1999); *Albritton v. State*, 769 So. 2d 438 (Fla. 2d DCA 2000).

*Walton*, 208 So. 3d at 65 (quoting *Moody v. State*, 842 So. 2d 754, 758 (Fla. 2003)).

We applied the mixed standard of review and held that the out-of-court identification was unnecessarily suggestive and gave rise to a substantial likelihood of irreparable misidentification. *Id.* at 65-67.

In *McWilliams*, the appellant was convicted of three counts of sexual battery, one count of aggravated battery, and one count of aggravated assault. 306 So. 3d at 132. The trial court had denied the appellant's motion to suppress an out-of-court identification made during a show-up. *Id.* at 133-34. The Third District expressly acknowledged that the issue of whether an identification procedure violates due process presents a mixed question of law and fact. *Id.* at 134 (citing *Sumner*, 455 U.S. at 597). For the

- 27 -

standard of review, the district court stated it would "defer to [the] trial court's findings of fact as long as they are supported by competent, substantial evidence, but . . . review de novo [the] . . . application of the law to the historical facts." *Id.* (alterations in original) (quoting *Ross v. State*, 45 So. 3d 403, 414 (Fla. 2010) (citing *Cuervo v. State*, 967 So. 2d 155, 160 (Fla. 2007))).

The Third District applied the mixed standard of review and held that the out-of-court identification was unnecessarily suggestive but that it did not give rise to a substantial likelihood of misidentification. *Id.* at 134-37.

Thus, *Walton* and *McWilliams* applied a mixed standard of review, which conflicts with the more deferential abuse of discretion standard employed in the decision below, without considering possible distinctions in the out-of-court identification context. As we have already said, the nature of the trial court's ruling on this type of evidence convinces us that abuse of discretion review is the proper standard.

## IV. Applying Abuse of Discretion Review to *Alahad*

We agree with the Fourth District that in the present case, the trial court did not abuse its discretion in admitting the out-of-court identification.

On the first prong of the analysis, we conclude that reasonable minds could differ as to whether the show-up procedure was unnecessarily suggestive. As mentioned above, although a show-up is inherently suggestive, *Perez*, 648 So. 2d at 719, it is not unnecessarily suggestive unless police aggravate the suggestiveness of the procedure. *Jackson*, 744 So. 2d at 548 (citing *Johnson*, 817 F.2d at 726). We conclude that there is competent, substantial evidence in the record to support the trial court's factual findings. For the first prong application of law to fact, we agree with the Fourth District that it was reasonable for the trial court to conclude that the procedure was not unnecessarily suggestive. Presenting the suspect in handcuffs or with flanking officers does not make the procedure unnecessarily suggestive. *See id.* at 548 (stating that presenting the suspect in handcuffs was not police conduct aggravating the suggestiveness of a show-up) (citing *Johnson*, 817 F.2d at 729). Neither does a police officer's general

statement to the eyewitness that the suspect matches the eyewitness description. *See Anderson*, 946 So. 2d at 582 (concluding that police aggravated the suggestiveness of the procedure when they made a specific statement to the eyewitness that the suspect had clothing fitting the description and had a screwdriver, the weapon used).

Moreover, it was reasonable for the trial court to conclude that police's failure to present Nixon in the show-up did not make the procedure unnecessarily suggestive when police had corroborating evidence leading to Alahad. *See Simmons v. United States*, 390 U.S. 377, 384-85 (1968) (stating that the "inconclusive clues" leading to the suspects were one factor, among others, that did not make the procedure unnecessarily suggestive).

Because we agree with the district court that the trial court reasonably concluded that the show-up was not unnecessarily suggestive, we hold that the trial court did not abuse its discretion in ending the inquiry and admitting Matthews's out-of-court identification.

# CONCLUSION

For these reasons, we approve *Alahad*, clarify our Court's inconsistent case law in this area, and disapprove *McWilliams* to the extent that it applied de novo review to trial court rulings on out-of-court identifications.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions

   Fourth District – Case No. 4D19-3438

   (Broward County)

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

   for Petitioner

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and David M. Costello, Assistant Solicitor General, Tallahassee, Florida,

   for Respondent